ROACH v. KELSEY WHEEL CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—DEFENSES—REVIEW—RULE OF INDUSTRIAL ACCIDENT BOARD.

On certiorari to review an award of compensation by the industrial accident board, under the workmen's compensation act, defenses not relied upon in defendant's statement denying liability, filed in conformity with a rule of the board, and not relied upon on the hearing before the arbitration committee and on review before the full board, are not available in the appellate court.

2. SAME—"ACCIDENT"—DEATH—LIABILITY OF EMPLOYER.

Where claimant's decedent was employed to help tear down some brick work in the superheated boiler room of defendant's plant, during very hot weather in July, and was overcome by the heat on July 24th, remaining away from work on the 25th, but returning to work on the 26th and continuing to work until the afternoon of the 27th, when he was again overcome by the heat and died the same evening, his death was not the result of an accident rendering the employer liable under the provisions of the workmen's compensation act. MOORE and FELLOWS, JJ., dissenting.

Certiorari to Industrial Accident Board. Submitted October 16, 1917. (Docket No. 152.) Decided March 27, 1918.

Phoebe Roach presented her claim for compensation against the Kelsey Wheel Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Ætna Life Insurance Company, insurer, bring certiorari. Reversed.

*Douglas, Eaman & Barbour,* for appellants.

*Howard H. Campbell* (*Albert E. Meder,* of counsel), for appellee.

FELLOWS, J. (*dissenting*). Plaintiff is the widow of George Roach, a workman; defendant Kelsey Wheel Company an employer of labor operating under the workmen's compensation law at the time of the transaction; the Aetna Life Insurance Company its insurer. In the conduct of its business the Kelsey Wheel Company, hereafter called the defendant, deemed it necessary to tear out and rebuild the brick work around one of the boilers in its plant. Whenever it was necessary to do such work it was its custom to employ one Nicholas Jackman, a mason by trade, who would procure such additional help for it as might be desired. Jackman and the helpers were each paid the union wage by defendant, punched the clock as other employees did, and continued in the employ of defendant until the work in hand was completed. Jackman, Roach and others commenced this work July 24, 1916. The weather was extremely warm. The first thing done was to tear out the old brickwork, and carry away and dump the old brick and mortar outside. The wreckage was piled on trucks which were quite heavy, and these trucks when loaded were pushed outside the building by the workmen and unloaded. The brick work around the boiler was still warm when the work was undertaken and the adjoining boiler was in operation under a head of steam stated to be 125 pounds. The partition walls were heated and it is said

that the place where the wrecking was being done had a temperature of around 136 degrees. The laborers could not remain under such heat for any considerable time. On the first day of the employment decedent was prostrated by the heat and went home. He did not work the next day, but did the following day until shortly before quitting time, when we infer, although the record is not clear, he had another attack which was slight. The following afternoon he again collapsed, was taken to his home and died that evening. A fellow employee who was with him when he fell testified:

"I was with him on the last day that he worked there, when he fell. He was standing up and we were just going to give the thing another shove, this truck, and he fell over on the side of his face. We picked him up and he was bleeding. He fell against the only thing there, concrete. The fall made his face bleed. He fell right up against the concrete. It is all concrete there where we were working at the time. Hit his head against the concrete. He became unconscious right then. After he fell over he never said anything more. We were inside of Kelsey's yet. We were taking a rest. It was pretty heavy. We were inside of the building. We would shove it out a little, then take another rest. Then we gave another push and he fell. He had been working under the boilers there."

On October 16, 1916, plaintiff having filed a claim for compensation, defendant denied liability in the following language:

"As it appeared from our investigation that Mr. Roach's death was due to being overcome by the excessive heat of the season we did not regard same as arising out of the employment and therefore no report was made for your office and for the same reason we will have to decline entering into an agreement to pay compensation under the Michigan workmen's compensation act."

Arbitrators were appointed and at the opening of

the hearing by the board of arbitration the following occurred:

"*Chairman Reaves:* I will ask you to stipulate, Mr. Kennedy, what you can in this case.

"*Mr. Kennedy:* (defendant's attorney) As far as we are concerned we can admit that his wages were forty cents an hour, working eight hours a day.

"*Mr. Reaves:* You admit he was employed by the Kelsey Wheel Company?

"*Mr. Kennedy:* Yes.

"*Chairman Reaves:* As a laborer?

"*Mr. Kennedy:* Yes.

"*Chairman Reaves:* Repairing boilers?

"*Mr. Kennedy:* Yes.

"*Chairman Reaves:* For the Kelsey Wheel Company. He was employed there on July 27th?

"*Mr. Kennedy:* That is correct."

The board of arbitration awarded plaintiff $9.80 per week for 300 weeks, which award was affirmed by the industrial accident board. The accident board filed a full and complete finding which it will not be necessary for us to here detail. From this finding we gather that the board concluded that the deceased met his death as the result of a heat stroke induced by the superheated condition of the place of employment, coupled with the strain incident to moving the loaded truck. To review this proceeding we allowed this writ of certiorari. Defendant here insists that the award should be reversed:

"*   *   *   Because the board erred in finding:

"1. That George Roach was an employee of the Kelsey Wheel Company within the scope of the compensation act; because

"(*a*) His employment was casual only.

"(*b*) His employment was not in the usual course of the trade, business, profession or occupation of his employer.

"(*c*) He was an employee of an independent contractor.

"2. That death resulted from an accidental injury

sustained by Roach, arising out of and in the course of his employment."

We are met at the threshold of this case with a question of procedure which must be first considered, as it determines the scope of our inquiry. The plaintiff insists that the questions presented under the first head are not here available; that defendant in its statement denying liability relied solely upon the defense that deceased met his death by reason of excessive heat, which defendant then claimed, and now claims, was not an accident arising out of his employment; that the case was submitted to the board of arbitration upon that theory, and that by reason of this fact, and the admissions of the defendant, the defenses here sought to be interposed under the first head are not open, leaving the sole question for our consideration whether the death of deceased was, within the meaning of the act, due to an accident arising out of his employment.

By section 3, part 3, Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5456), the act creating the industrial accident board and prescribing its powers and duties, it is provided:

"The board may make rules not inconsistent with this act for carrying out the provisions of the act."

Pursuant to this provision the board has adopted a set of rules of procedure governing proceedings before the board, Rule V of which reads as follows:

"If the employer denies liability in case where a claim for compensation is filed by an injured employee or his dependents, such denial shall be filed with the board in writing by such employer and shall set forth with reasonable detail and certainty the facts and circumstances upon which he relies as a defense to such claim. Upon the filing of such denial in the office of the board, a copy of same shall be furnished to the claimant, so that he will have such seasonable information as to the nature and particulars of the employer's

defense as may be reasonably necessary to enable him to procure witnesses and prepare for the hearing. Respondents will be limited to the grounds of defense so stated on the arbitration hearing and also on review before the full board."

That power to make rules is lodged in the board, the section above quoted demonstrates; that the rule above quoted is a reasonable exercise of such power, seems to us beyond cavil. It bespeaks an orderly procedure, gives notice to parties interested of the issue raised, and an opportunity to procure witnesses and prepare for a hearing upon such issues. It aids the due administration of justice which is as much the duty of administrative boards as of the courts. We do not undertake to say and do not say that technical niceties, or strict rules of common law pleadings should be indulged in or favored. On the contrary, substance, rather than form, should be the object of attainment. That the board in its discretion, in the interest of justice, may allow amendments to such notice, we have no doubt. The question of abuse of discretion by the board being one for review in this court. *Brunette* v. *Mining Co.*, 197 Mich. 301.

In the case of *Lobuzek* v. *Foundry Co.*, 194 Mich. 533, this court had occasion to consider the rules of this board with reference to the taking of depositions in a foreign country, and reversed the case because the board based its finding upon a so-called "protocol" taken without notice and not in accordance with the rules. In *Brown* v. *George A. Fuller Co.*, 197 Mich. 1, we said:

"Had defendant intended to raise these questions it should have done so before the arbitration committee."

And in *Hamilton* v. *Macey Co.*, 195 Mich. 747, we said:

"While in proceedings of this nature we recognize

the propriety of ignoring so far as is reasonably possible technicalities, to the end that early adjudication may be had, we are still of opinion that the board in its consideration of evidence should be bound by rules promulgated under its own authority."

The rule in question was within the power of the board to adopt. It is reasonable and valid; it not only binds the board, and litigants before it, but it binds this court. Being reasonable and within the power of the board, this court must follow it and recognize it in cases coming here for review.

In the instant case only one defense was set up in the notice, and this appears to have been set up after "investigation." At the hearing before the board of arbitration certain facts were admitted without claim of any qualifying circumstances or facts surrounding them. The case was disposed of on the record as made. We must here dispose of it on the same record. The plaintiff is correct in the contention that the rule under consideration should be given force by this court, and that, giving force to it, defendants "will be limited to the grounds of defense so stated" in its denial of liability.

We therefore come directly to the meritorious question in the case, whether, within the meaning of the act, decedent's death resulted from a personal injury arising out of and in the course of his employment. That he collapsed on the premises of the defendant, while in its employ, is admitted; that he was within the ambit of his employment is not questioned; he was in the course of his employment beyond doubt. That he was a man in robust health with no predisposition to disease, and temperate in his habits, the record discloses. The board found that he suffered a heat stroke which was brought upon him by the superheated condition of his place of employment, and the testimony abundantly supports such conclusion; that he fell in-

stantly upon an excessive exertion in shoving the heavy truck loaded with brick and mortar after working in the heat under the boiler, appears from the testimony of his fellow employee who was by his side when he fell. This is not a case of a workman being subjected to the ordinary heat of a summer day and which is an incident in the life of all, but is a case where to the natural heat of a hot summer day was added in the particular place of his employment so many degrees of artificial heat as to make it well nigh intolerable, and the men could stand it but a short time and changed frequently. The case is very much like that of *LaVeck* v. *Parke, Davis & Co.*, 190 Mich. 604, and is controlled by it. If anything, it is stronger for the plaintiff than was that case. As that case is so recent and the authorities are there considered, we content ourselves with citing that case, and challenging attention to the following cases there cited which are particularly in point: *Ismay, Imrie & Co.*, v. *Williamson*, 1 B. W. C. C. 232; *Johnson v. SS. Torrington*, 3 B. W. C. C. 68. See, also, *Davies* v. *Gillespie*, 5 B. W. C. C. 64; *Maskery* v. *Shipping Co.*, 7 B. W. C. C. 428, and the late case of *Kanscheit* v. *Laundry Co.*, 101 Neb. 702 (164 N. W. 708).

The award of the industrial accident board should be affirmed.

MOORE, J., concurred with FELLOWS, J.

BROOKE, J. I concur with Justice FELLOWS in holding that the defenses relied upon by appellant under its first claim are not available to it because of the rule of the board limiting the grounds of defenses to those stated "on the arbitration hearing and also on review before the full board."

Upon the second question involved, however, I am unable to agree with the conclusion stated by my Brother FELLOWS. I have examined this record with

care and cannot find therein any evidence of an accident. The work in which claimant's decedent was engaged at the time he was prostrated was being carried on on July 24th, 25th, 26th, and 27th at a time when the temperature outside the building was extremely high. He was overcome and fell unconscious on the 24th and did not report for duty on the 25th. On the 26th he continued to work practically during the entire day, but complained of a headache and stopped working shortly before quitting time. On the 27th he again worked practically the whole day, being again overcome by the heat at about 4 o'clock in the afternoon and he died at 6 or 7 o'clock upon that day. The record is absolutely barren of any evidence that anything untoward or unusual happened in the course of his employment during any of the three days or that he exerted himself in any unusual manner or to an unusual degree. He was doing the work which he and his associates were employed to do exactly in the manner they expected to do it. To permit recovery in this case would make it impossible to deny recovery in any case where a fireman of a stationary or marine boiler, in the performance of his ordinary and accustomed labor, succumbs to heat prostration.

The Michigan compensation act provides compensation for accidental injuries only, *Adams* v. *Color Works*, 182 Mich. 157. Recovery here is predicated upon the cases of *Schroetke* v. *Jackson-Church Co.*, 193 Mich. 616, and *LaVeck* v. *Parke, Davis & Co.*, 190 Mich. 604. I am of opinion that neither case is authority for the determination of the board, but that compensation should have been denied under our holdings in *Kutschmar* v. *Briggs Manfg. Co.*, 197 Mich. 146, and *Johnson* v. *Mining Co.*, 199 Mich. 218.

The award of the board should be reversed.

OSTRANDER, C. J., and BIRD, STEERE, STONE, and KUHN, JJ., concurred with BROOKE, J.