**SECURITY UNION CASUALTY CO. v.
BROWN et ux.  (No. 1539.)**

Court of Civil Appeals of Texas.  Beaumont.
June 22, 1927.

Rehearing Denied Sept. 21, 1927.

1. Master and servant ⚖═417(7)—Whether
employee, killed by falling derrick during
windstorm, was subjected to greater hazard
than general public, held for jury (Work-
men's Compensation Act [Rev. St. 1925, art.
8309]).

Under Workmen's Compensation Act (Rev.
St. 1925, art. 8309), providing that employee is
not entitled to compensation where injuries were
due to act of God, at time when employee was
not engaged in performing duties subjecting
him to a greater hazard than ordinarily applied
to the public generally, whether employee of oil
concern, killed by falling derrick during wind-
storm, was subjected to greater hazard, *held*
for jury.

2. Master and servant ⚖═405(1)—Jury's find-
ing that employee, killed by falling derrick
during windstorm, was subjected to greater
hazard than general public, held supported by
evidence  (Workmen's  Compensation  Act
[Rev. St. 1925, art. 8309]).

Jury's finding that employee of oil well con-
cern, killed by falling derrick during wind-
storm, was subjected to a greater hazard than
ordinarily applied to the public generally, *held*
supported by evidence, so that he did not come
within the exception of Workmen's Compensa-
tion Act (Rev. St. 1925, art. 8309).

Appeal from District Court, Liberty Coun-
ty; Thos. B. Coe, Judge.

Suit by the Security Union Casualty Com-
pany, insurer, against G. O. Brown and wife,
to set aside an award of the Industrial Ac-
cident Board, granting compensation to de-
fendants for the death of their son while em-
ployed by the Peer Oil Corporation. Judg-
ment for defendants, and plaintiff appeals.
Affirmed.

Fairchild & Redditt, of Lufkin, for appel-
lant.

E. B. Pickett, Jr., of Liberty, for appellees.

O'QUINN, J.  Appellant brought suit against
appellees in the district court of Liberty coun-
ty to set aside an award of the Industrial Ac-
cident Board.  Trial was had before a jury
upon special issues, which they answered in
favor of appellees, and judgment was accord-
ingly.

Appellees, G. O. Brown and Nellie Brown,
were the father and mother of A. P. Brown,
who was killed on March 30, 1926, while in
the employ of the Peer Oil Corporation near
Liberty, Tex.  A. P. Brown was about the
age of 17, unmarried, and was killed while
engaged in the work which he was required
to perform as an employee of the Peer Oil
Corporation, by being caught under and
crushed by a falling derrick, which was blown
down by a severe windstorm.  The Peer Oil
Corporation was a subscriber under the
Workmen's Compensation Act (Rev. St. 1925,
arts. 8306–8309), carrying its policy of insur-
ance with appellant.  G. O. Brown and Nellie
Brown duly filed claim for compensation with
the Industrial Accident Board.  Liability was
denied by appellant upon the ground that the
death of A. P. Brown was caused by an act of
God, and that at the time he received his in-
juries resulting in his death he was not en-
gaged in the performance of duties that sub-
jected him to a greater hazard from an act of
God than applied ordinarily to the general
public.  Compensation was awarded appellees
for 360 weeks, to be paid in weekly install-
ments.  From this award appellant appealed,
by bringing this suit to set same aside.  It
is agreed that all parties have duly complied
with the giving of all notices and other for-
malities required by law.

In answer to special issues submitted to
them, the jury found (1) that the deceased, A.
P. Brown, was, at the time of his death, en-
gaged in the performance of duties that sub-
jected him to a greater hazard from the act
of God responsible for his injury than ordi-
narily applied to the general public; (2) that
his average daily wage was $5; and (3) that
it would be a manifest hardship and injustice
to deny his surviving parents payment in a
lump sum in settlement of the compensation
to which they were entitled.  The average
daily wage of deceased being $5, therefore,
based upon that wage, the compensation due
appellees would be $17.30 per week for 360
weeks; but, after allowing the proper dis-
count for a lump sum payment, the amount
due is the sum of $5,297.68, for which judg-
ment was rendered.

Appellant's first proposition is:

"An employee is not entitled to recover com-
pensation under the Workmen's Compensation
Act of the state of Texas, when the undisputed
evidence shows that the injuries were due to an
act of God, and, at the time they were received,
said employee was not engaged in the perform-
ance of duties that subjected him to a greater
hazard than ordinarily applied to the public gen-
erally."

[1] As an abstract proposition of law, the
proposition is correct, for it is the pronounce-
ment of the statute, article 8309, Rev. St.
1925.  But whether deceased was engaged in
the performance of duties that subjected him
to a greater hazard than applied ordinarily to
the general public was a question of fact for
the jury.  We do not think that it can be said
that the evidence was undisputed that such
was not the case.  Deceased was engaged in
the performance of his usual duties, working
in the nighttime at and about an oil derrick.
A violent and sudden windstorm came, which

---

blew down many derricks—80 or more—in a small strip of territory some quarter of a mile wide in the oil field. The derrick at which deceased was working was blown down and upon deceased, killing him. A witness who was working near deceased testified:

"There was a path where it hit; it took every derrick, cleaned everything, but it didn't take all the houses. That was right in the path of the storm. This derrick that was 75 feet from the one that blew down, I don't think it was in the path of the storm; but I do not know. There were not any derricks standing up in different places all over the field; that is, not in that path. There wasn't a derrick standing in that path. I think that path was something around a quarter of a mile wide. If there was a derrick standing down there, I do not remember it. I went down there the next morning. That path extended south from the Peer lease. It took in the Navarro and a part of the Sun's and Gulf's. From what I saw there, the indications were that that wind was traveling east and west. That path led east and west practically." .

He further testified:

"There were 75 or 80 derricks blown down in the south Liberty field. It blew down one shack that I know of. I heard other derricks fall. The derricks all crashed pretty close together, just like shooting a gun. As the wind went down the field, the derricks went down. That same wind came in contact with the house and shacks that were left standing. It came in contact with everything that was out there that was in its path."

He further testified:

"I have lived in and about oil fields practically all my life. Derricks are very easily blown down. Wind is more apt to blow a derrick down than a house or a shack. I never saw a field that that didn't happen. I was about Spindle Top in the early days. I saw windstorms there such as this. Sometimes it would blow down half of them, and sometimes just one or two."

There was much other testimony going to show that, owing to the construction and height of derricks, they were more easily blown down than houses, or shacks, as some called them. These witnesses testified from personal experience and observation, gained during years of contact with oil fields, that in many instances within their knowledge, where the derricks were almost all blown down, the wind had little effect on houses within its path.

M. Sprague testified that for 21 years he had been, and was then, connected with the Weather Bureau office at Houston, Texas. He said:

"The wind velocity increases as you go aloft. The trees, buildings, and one thing and another retard the wind near the ground. As you ascend, there is nothing to retard the wind. Then it would, in coming in contact with them, have more force against tall objects than it would against low objects. I am familiar with the general appearance of oil derricks in the Gulf Coast country. That would be true as to the force of wind that would ordinarily come in contact with the tops of those derricks, as compared with that which would come in contact with objects only 10 or 15 or 20 feet high. It would be greatly increased as you approach the top of the derrick. It would strike against it with more velocity, as it went higher."

[2] Certainly the windstorm that blew down the derrick and killed deceased was an act of God, yet the record abundantly supports the jury's finding that at the time of receiving his injury and death deceased was engaged in the performance of duties that subjected him to a greater hazard from the act of God than applied ordinarily to the general public—a hazard incidental to the character of the work he was doing and the nature of the equipment with which he must work. A sudden and violent windstorm, only a few hundred yards in width, struck an oil field covered with towering derricks and houses and shacks. The general public was not subject to the hazard that those working at the derricks were, because the evidence, without dispute, shows that persons in and about them were in greater hazard than others not like situated, as the derricks were much more easily blown down than were the houses and shacks exposed to the same wind. United States Fidelity & Guaranty Co. v. Rochester (Tex. Civ. App.) 281 S. W. 306 (writ refused, 115 Tex. 404, 283 S. W. 135).

Appellant's second proposition is to the effect that the judgment awarding compensation to appellees in a lump sum is not supported by the evidence, but is contrary to the evidence, and that, if compensation is to be given appellees, then it should be paid in weekly installments.

We think the assignment should be overruled. The evidence was sufficient to raise the issue whether the compensation should be paid in a lump sum, and a special issue submitting that question to the jury was answered in favor of appellees. We shall not set out the testimony on this issue, but will say that in our opinion it was not only sufficient to raise the issue, but ample to support the verdict of the jury that manifest hardship and injustice would result if the compensation was paid in weekly payments.

No error being shown, the judgment is affirmed.