DOYLE *v.* CITY OF SAGINAW.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SUN- STROKE NOT COMPENSABLE ACCIDENT.

Sunstroke is not compensable accident within meaning of workmen's compensation act of Michigan.

2. SAME—"ACCIDENT" USED IN POPULAR SENSE.

Expression "accident" is used in workmen's compensation act in popular and ordinary sense of word as denoting unlooked for mishap or untoward event which is not expected or designed.

---

As to injury caused by weather conditions such as lightning, sunstroke, etc., see annotation in L. R. A. 1918F, 936.

As to popular meaning of "accident," see annotation in L. R. A. 1916A, 29, 227; L. R. A. 1917D, 103; L. R. A. 1918F, 867.

3. MUNICIPAL CORPORATIONS—PENSIONS—WORKMEN'S COMPENSATION
   ACT—SAGINAW CHARTER.

Since Saginaw city charter provides for payment of pensions to
injured firemen, policemen, and their dependents only after
payment of awards under workmen's compensation act has
ceased, charter provisions apply only to such accidental injuries
as are compensable under said act.

4. SAME—CONDITION PRECEDENT.

Receiving of compensation under workmen's compensation act
is condition precedent to receiving pension under Saginaw
city charter.

5. STATUTES—"SUPPLEMENTAL" ACT DEFINED.

"Supplemental" act is one designed to improve existing statute
by adding something thereto without changing original text.

6. SAME—SUPPLEMENTARY STATUTES INCLUDE ALL AMENDATORY
   LEGISLATION.

Supplemental statutes include every species of amendatory legis-
lation which goes to complete legislative scheme.

7. MUNICIPAL CORPORATIONS—PENSIONS—WORKMEN'S COMPENSATION
   ACT—SAGINAW CHARTER.

Provisions of Saginaw city charter for payment of pensions to
certain injured employees and their dependents, being only
supplemental to provisions of workmen's compensation act,
create no original and independent rights, but only something
in addition to rights under said act.

8. SAME—NO ELECTION TO TAKE UNDER CHARTER OR COMPENSATION
   ACT.

Widow of deceased police officer has no election to take pension
under Saginaw city charter or compensation under work-
men's compensation act, since right to pension is dependent
on right to compensation under said act.

9. SAME—RIGHTS UNDER SAGINAW CHARTER AND COMPENSATION ACT
   CUMULATIVE.

Provisions of Saginaw city charter for payment of pensions to
certain injured employees and their dependents and provi-
sions of workmen's compensation act for payment of com-
pensation are cumulative and not alternative rights.

Certified questions from Saginaw; Browne (Clar-
ence M.), J. Submitted April 26, 1932. (Calendar
No. 35,765.) Decided June 6, 1932.

Action by Margaret Doyle against City of Saginaw, a municipal corporation, for accrued pension as dependent of deceased husband, William Doyle, a police officer. Questions relative to allowance of pension for sunstroke under charter certified to this court under Court Rule No. 78.

*A. Elwood Snow,* for plaintiff.

*David E. McLaughlin,* City Attorney, for defendant.

BUTZEL, J. The following statement of facts and controlling questions of law have been certified to this court pursuant to the provisions of Rule No. 78 of Michigan Court Rules:

On July 22, 1923, and prior thereto, William Doyle was a police officer of the city of Saginaw duly qualified and acting as such. On that day, while engaged in the performance of his official duties as a police officer, he suffered a sunstroke and thereafter died on May 15, 1925. Following the sunstroke, William Doyle became ill and was treated by a physician until the time of his death, and, for the purposes of this record, the sunstroke is considered the proximate cause of his sickness and death. Neither William Doyle, in his lifetime, nor his widow, or any person claiming to be his dependent, made any claim for or received workmen's compensation under the workmen's compensation act (2 Comp. Laws 1929, § 8407 *et seq.*). On October 20, 1925, Margaret Doyle, the widow of William Doyle, made application to the council of the city of Saginaw for a pension under the provisions of the charter of the city of Saginaw providing for pensions to the widows and dependents of firemen and policemen dying as the result of injuries received while in the perform-

ance of their official duties. Hearing was had upon this petition by the council November 24, 1925. On October 14, 1930, the council formally denied the application for pension. On October 21, 1930, suit was commenced in the circuit court for the county of Saginaw for the recovery of moneys claimed to be due on account of accrued pension. The plaintiff filed a declaration and the defendant thereupon moved to dismiss.

The relevant provisions of the charter of the city of Saginaw are as follows:

"Sec. 154. Any person who has been a fireman or a policeman and a member of the fire or police department of the city of Saginaw for a period of twenty-five years, may, by written application, be placed on the list of retired firemen and policemen of this city., In computing the period of service of any fireman or policeman, the length of time served by him as a member of the fire or police department of either the city of Saginaw or East Saginaw as they formerly existed before consolidation as the city of Saginaw, shall be added to the time he has served in the city of Saginaw as now constituted.

"Sec. 155. Any person who is a fireman or policeman and has been a member of the fire or police department of the city of Saginaw, Michigan, for a period of ten years, who may hereafter become incapacitated, while in the actual performance of his official duty, through any cause other than by accident, shall be placed on the list of retired firemen and policemen of this city by resolution of the council of the city of Saginaw, whenever there may be furnished to said council sufficient proof of such incapacity. The said council to prescribe the form and character and sufficiency of the proof required.

"Sec. 156. All firemen and policemen who may be placed on the retired list and remain thereon, shall receive a sum equal to one-half of their annual

salary paid to them at the time of their retirement, not to exceed six hundred dollars per year, to be paid to them, in equal weekly payments during the remainder of their lives.

"SEC. 161.  When the widow, children or dependent parent, or either of them shall be entitled to a pension, as in this charter provided, such widow, children or dependent parent shall make application for a pension to the said council, on a form to be provided by said controller, and shall furnish such proof with reference to marriage, birth and age of children, and dependency of parents, and other essential particulars, as said council, aforesaid, shall determine or require.  All applications and proof shall be retained in the office of the controller of said city.  When applications for pensions are allowed, due notice of such action, with the names of all pensioners, shall be given to the controller, who shall cause such record to be made as in this charter provided.

"SEC. 162.  In case of incapacity of any fireman or policeman at any time from injury or accident received by him in the performance of his official duty, or in case of death resulting from injury received by him in the performance of his official duty, there shall be paid to him or his widow, children or dependent parents, as the case may be, the sum provided for in section 156 of this charter, provided, however, that this sum or sums shall not be paid until after said person or his widow, children or dependent parents shall have ceased to receive compensation under and by virtue of the 'Michigan workingman's compensation and employers' liability acts,' approved March 20, 1912, the provision of this charter being supplemental to said act; and provided, further, that in case said 'workingman's compensation and employers' liability act' shall be held unconstitutional or void for any reason by the Supreme Court of the State of Michigan, or the Supreme Court of the United States, then the pro-

visions of this charter shall obtain as to firemen and policemen injured, or killed while in the performance of their official duty, the same as though incapacitated from any other cause."

### Questions.

*First:* Was sunstroke an injury within the meaning of the pension provisions of the charter of the city of Saginaw?

*Second:* Was an application for and an award and payment of workmen's compensation a condition precedent to the payment of the pension provided for in the charter of the city of Saginaw?

*Third:* Under the terms of the charter of the city, is a pension payable for an injury which is not within the provisions of the workmen's compensation act and of a character for which workmen's compensation could not be recovered?

*Fourth:* Has the plaintiff, widow of the deceased police officer, an election to take the pension provided in the charter or workmen's compensation?

*Fifth:* Are the provisions of the charter for pension and provisions for workmen's compensation alternative or cumulative rights?

It is unnecessary to discuss at length the nature of a sunstroke, about which there is not a unanimity of opinion among the medical authorities. Heatstroke and sunstroke are so similar that the terms are frequently used interchangeably. According to 14 Oxford Medicine, pt. 2, p. 664 (2):

"There is abundant proof based on clinical observations and experimental investigations which support the view that heatstroke results from a disturbance of the heat balance of the body due to an environment that is unfavorable for heat elimination * * *. The theory that sunstroke is due to the actinic rays of the sun rather than to heat is no longer tenable."

We are surfeited with so many serious questions
in jurisprudence that we dare not venture, even
were we able, to pass judgment upon controversies
in fields foreign to our own.  We are able to say,
however, that sunstroke is not a compensable acci-
dent in the meaning of the workmen's compensation
act of Michigan.  At most it may be regarded in
the same light as an occupational disease and not
within the purview of the act.  Decisions from other
States where the act differs from our own are not
pertinent.  It is true that in *LaVeck* v. *Parke, Davis
& Co.,* 190 Mich. 604 (L. R. A. 1916D, 1277), in the
case of a workman who was overcome while in a
very hot room where he was obliged to perform an
abnormally large amount of work during the week,
the court held that the unusual hours of work and
the unusual conditions were the cause of a cerebral
hemorrhage and resulting paralysis, and that he
was entitled to compensation.  This case was distin-
guished in *Roach* v. *Kelsey Wheel Co.,* 200 Mich.
299, where plaintiff's decedent was working with
others in rebuilding brickwork around a boiler which
caused the temperature of a very hot day to rise to
about 136 degrees, and decedent was overcome while
working and later died from prostration.  It was
held that this was not a compensable injury.  A dis-
senting opinion conceded by implication that had
death been due to the natural heat of a summer's
day, there could be no recovery.

In *Adams* v. *Acme White Lead & Color Works,*
182 Mich. 157 (L. R. A. 1916A, 283, 6 N. C. C. A.
482, Ann. Cas. 1916D, 689), it was held that lead
poisoning was not an accidental injury compensable
under the Michigan statute, but it was such a disease
as might be expected from the nature of the work.
In *Landers* v. *City of Muskegon,* 196 Mich. 750 (L.

R. A. 1918A, 218), a fireman died of pneumonia contracted as a result of becoming drenched while fighting a fire. The court, in holding that it was not an accidental injury, stated:

"The expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed."

In *Sherman* v. *Flint Spring Water Ice Co.*, 229 Mich. 648:

"Wearing a wet mitten on a zero day and freezing his hand is not an accident within the meaning of the compensation act. Getting one's hands wet and cold, and one's mittens wet, while engaged in handling ice are natural, if not necessary, incidents of the work."

To like effect: *Andrejwski* v. *Wolverine Coal Co.*, 182 Mich. 298 (6 N. C. C. A. 807, Ann. Cas. 1916 D, 724); *Kutschmar* v. *Briggs Manfg. Co.*, 197 Mich. 146 (L. R. A. 1918B, 1133); *Stombaugh* v. *Peerless Wire Fence Co.*, 198 Mich. 445; *Wilcox* v. *Clarage Foundry & Manfg. Co.*, 199 Mich. 79; *Perkins* v. *Jackson Cushion Spring Co.*, 206 Mich. 98; *Savage* v. *City of Pontiac*, 214 Mich. 626; *Hagrove* v. *Arnold Construction Co.*, 229 Mich. 678 (40 A. L. R. 398); *Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich. 496; *Sinkiewicz* v. *Lee & Cady*, 254 Mich. 218.

Many municipalities have provided for pensions in case of death or disability of policemen on account of the unusual risk they run in encountering lawlessness or acting in dangerous situations. The quoted provisions of the charter, however, do not state the reason for their adoption. Counsel do not question but that the workmen's compensation act applies to policemen under 2 Comp. Laws 1929,

§§ 8411, 8413. The fact that neither Doyle nor his
dependents made application for compensation does
not help us in construing the charter, for sunstroke
is not a compensable accident or injury under the
act. The main question is whether the right to pen-
sion exists when the right to compensation does not
exist. The provisions of the charter, if read without
reference to the workmen's compensation act, might
lead us to other difficulties in determining for what
length of time compensation should run to the chil-
dren of a deceased policeman who survived their
mother. We are led to the conclusion that addi-
tional compensation is provided for only after the
payment of the weekly awards under the act, and
that as the charter provisions are only supplemental
to the act, they apply only to such accidental in-
juries as are compensable under the act. *Slater* v.
*City of Grand Rapids,* 248 Mich. 480, and *Ford* v.
*Kuehne,* 242 Mich. 428, are not pertinent, for the
charter provisions therein referred to contained no
such conditions or limitations as those now in ques-
tion. The provisions of the charter that the sums
specified therein should not be payable until ''after
said person or his widow, children, or dependent
parents, shall have ceased to receive compensation
under'' the act, and the further statement that the
provisions of the charter are ''supplemental'' to
the act, cannot be overlooked. These words show
that the receiving of compensation is a condition
precedent to receiving a pension. A supplemental
act is one designed to improve an existing statute,
by adding something thereto without changing the
original text. *McCleary* v. *Babcock,* 169 Ind. 228
(82 N. E. 453); *Loomis* v. *Runge,* 14 C. C. A. 148
(66 Fed. 856). Supplemental statutes include every
species of amendatory legislation which goes to

complete a legislative scheme. *Rahway Sav. Institution* v. *Common Council of Rahway*, 53 N. J. Law, 48 (20 Atl. 756) ; *First State Bank of Shelby* v. *Bottineau County Bank,* 56 Mont. 363 (185 Pac. 162, 8 A. L. R. 631).

The charter provision in the case at bar being "supplemental" it is clear that it creates no original and independent rights, but only something in addition to the compensation act. It is necessary to tie it up with the compensation act, and to limit recovery under it to situations where the injured party can and does receive compensation. Since sunstroke is not compensable under the act, it is not compensable under the charter.

Questions 1, 3, 4, should be answered: No. Question 2 should be answered: Yes. Question 5 should be answered: The provisions are cumulative rights. The questions being of a public nature, no costs will be allowed.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.