BELLINGER v. HERSEY GRAVEL CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SUNSTROKE NOT COMPENSABLE ACCIDENT.

   Sunstroke is not compensable accident within purview of workmen's compensation act of Michigan.

   NELSON SHARPE, C. J., and POTTER and BUSHNELL, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted January 12, 1934. (Docket No. 43, Calendar No. 37,494.) Decided June 4, 1934.

Robert Bellinger presented his claim against Hersey Gravel Company, employer, and Michigan Mutual Liability Company, insurer, for accidental injury received while in defendant's employ. Award to plaintiff. Defendants appeal. Reversed.

Donald W. Gilbert and Edward C. MacRae, for plaintiff.

L. J. Carey, George J. Cooper and R. B. Hart, for defendants.

NELSON SHARPE, C. J. (*dissenting*).   In the early
morning of July 19, 1932, the plaintiff, at that time
an employee of the defendant gravel company, here-
after called the defendant, left his home and walked
about two and one-half miles to the city hall in the
city of Saginaw, where, as was the usual practice,
he was picked up by a truck belonging to the defend-
ant and driven to his place of work on the highway
between Saginaw and Bridgeport. His regular work
was on a forenoon shift from 5:30 a. m. until noon.
It consisted in the filling in and leveling off, by hand,
of the roadbed and shoulders of the highway ad-
jacent to the cement slab. He began work on the
19th at 5:30 a. m., and worked until noon. He testi-
fied that a few minutes before 12 o'clock his foreman
came to him and said: "I want you to work this
afternoon." "I says 'I haven't got any dinner with
me.' He says 'You can—you ought to fetch your
dinner.' I said 'I didn't know I was going to work.
If you had told me last night I would have had one.'
He said 'You can work anyhow. I guess you can
stand it all right.' I didn't say nothing back. Afraid
of losing out on my job;" that a truck drove up
and he went with it as directed and got a load of
concrete blocks and then a load of sand which they
shoveled into the roadway and graded it down; that
a little later the foreman said to him, "There is a
lunch over there in my basket. Go over and get it;"
that he found a small sandwich in the basket and ate
it; that he then went with the truck and got heavy
rolls of burlap used for covering the cement, and
that he and another man loaded these rolls on the
truck while it was moving. It is conceded that while
at such work, and at about 2:30 o'clock, he collapsed
and became unconscious. He was taken to a hos-
pital in Saginaw, and remained in that condition
until the following morning. He was in the hospital

for three days, and was confined to the bed at home for over two months.

Dr. Powers, who attended the plaintiff at the hospital to which defendant's superintendent took him, testified that the plaintiff was suffering from a severe attack of sunstroke; that "it is well recognized that exhaustion and various exciting conditions predisposes to sunstroke," and that the fact that plaintiff had been practically without nourishment since early morning "would be a very strong predisposing factor; make the man more susceptible to the effect of the sun and heat." On his attention being called to the fact that the man working with him was not also affected, he said:

"You couldn't exclude the testimony to the effect that he had not had anything to eat since three o'clock in the morning, except a sandwich just shortly before. And we do know that lack of nourishment, undernourishment and fatigue all have a tendency to increase the susceptibility of an individual to the effect of heat and sun."

On being asked if there was any other reason to account for it he said:

"Lack of food and the fatigue that goes along with working overtime, working more than the ordinary length; working overtime. I know of no other factors that would give me a lead as to whether or not this man suffered and the other man didn't. I cannot help but believe that if this man had not had extreme hunger or lack of food and excessive work that his chances were very good and never would have been bothered by the sun."

Robert T. McMillen, an observer of the weather bureau, and whose record was accepted as official by defendant's counsel, testified that it showed— "The 19th of July, 1932, minimum, 8 a. m. 75; maximum temperature, 97.1; 8 p. m. 86.10;" that these

observations were made on the roof of a three-. story building, from a thermometer placed in a lattice box, and that in his opinion it would have shown several degrees higher if placed on the street and exposed to the rays of the sun. It was the hottest day of the summer up to that time.

On August 22, 1932, he made claim for compensation. Defendant denied liability. Proofs were taken before a deputy commissioner, who found for the plaintiff and made an award in his favor of $9 per week for a period of total disability. On review before the commission, this award was affirmed, of which defendants here seek review.

In its opinion the commission said:

"The record fully substantiates the finding that he is at present totally disabled, suffering dizziness, headaches, ear sounds and complete exhaustion on physical effort such as bending or lifting and he is especially sensitive to heat, particularly solar heat. The record shows that he has recently fallen several times, once between the first and second hearing, bruising his left knee severely.    *    *    *

"We find that the plaintiff was subjected to a greater risk than his fellow employees and that the injury was a result of such unusual exposure."

While the word "accidental" is used in the title to the act, and it appears in several of the sections thereof, and this court has held that compensation may be awarded for accidental injuries only (*Robbins* v. *Original Gas Engine Co.,* 191 Mich. 122), it must not be overlooked that the term is here connected with employment. The accident, to be compensable, must arise out of and in the course of the employment, and, as said by Mr. Justice OSTRANDER in the case just cited:

"The statute seems to contemplate that an accidental injury may result by mere mischance; that

accidental injuries may be due to carelessness, not wilful, to fatigue, and to miscalculation of the effects of voluntary action.''

While the immediate cause of plaintiff's collapse may be said to have been the heat of the sun, there were a number of contributing causes. The plaintiff was fatigued. He had walked several miles to reach the truck which took him to his place of work. He had eaten but a small sandwich since his very early breakfast; he had labored six and one-half hours, and was put to work again after but one-half hour of rest; the day was an exceptionally warm one, the hottest of the season; the work that he was at that time called upon to do was more strenuous than his usual work. These facts were all known to defendant's foreman, who must have realized the danger to which the plaintiff was subjected thereby. Of course, he did not anticipate the result which followed. It was unexpected and unusual. It was not the natural and probable consequence of his exposure to the sun, and would not ordinarily have followed therefrom.

The conditions under which the plaintiff was laboring at the time of his collapse were well known to defendant's foreman. He started to work for the defendant on July 5th. Prior thereto he had been working for the welfare department of the city. His wife was suffering from tubercular trouble. He had seven children. He testified that he continued to work when ordered to do so by the foreman because he was afraid of losing his job. While these facts in no way affect defendant's liability, they may be considered in explanation of plaintiff's persisting at his work when he felt the effects of fatigue and lack of nourishment.

In *La Veck* v. *Parke, Davis & Co.*, 190 Mich. 604 (L. R. A. 1916 D, 1277), the plaintiff suffered a

cerebral hemorrhage as a result of the unusual heat
of the room in which he was working and over-exer-
tion rendered necessary by the demands of his em-
ployer.  This court, in affirming the holding of the
commission that the injury was the result of an acci-
dent, said:

"In the instant case Mr. La Veck intended to do
the prolonged work which the situation demanded,
but he did not anticipate that because of doing so
his blood pressure would be so increased as to re-
sult in the rupture of a cerebral blood vessel.  Ac-
cording to the testimony of some of the physicians
that result could be traced to the unusual hours of
work and the unusual conditions.  It was an unex-
pected consequence from the continued work in the
excessively warm room."

It may well be said that the injury plaintiff sus-
tained was the "unexpected consequence" from his
work under the unusual heat of the sun in his then
physical condition.

Counsel for the defendant rely upon our holdings
in *Roach* v. *Kelsey Wheel Co.,* 200 Mich. 299, and
*Doyle* v. *City of Saginaw,* 258 Mich. 467.  In the
majority opinion in the *Roach Case* it was said
(p. 307):

"The record is absolutely barren of any evidence
that anything untoward or unusual happened in the
course of his employment during any of the three
days or that he exerted himself in any unusual man-
ner or to an unusual degree.  He was doing the
work which he and his associates were employed to
do exactly in the manner they expected to do it.
To permit recovery in this case would make it im-
possible to deny recovery in any case where a fire-
man of a stationary or marine boiler, in the per-
formance of his ordinary and accustomed labor,
succumbs to heat prostration."

In the *Doyle Case* it appeared that the deceased, while engaged in the performance of his official duties as a police officer on July 22, 1923, suffered a sunstroke, and it was claimed that it caused his death on May 15, 1925, nearly two years thereafter. It was said in that case (p. 473):

"We are able to say, however, that sunstroke is not a compensable accident in the meaning of the workmen's compensation act of Michigan."

The circumstances under which the plaintiff in this case was injured are so entirely different that we do not think the broad statement therein made is controlling. The great weight of authority sustains the claim that the conditions under which the injury occurred must be considered in determining the question.

In *Young* v. *Western Furniture & Manfg. Co.*, 101 Neb. 696 (164 N. W. 712, L. R. A. 1918 B, 1001), the plaintiff was overcome with heat while working in defendant's factory and died seven days thereafter. It was there claimed that the deceased had not suffered an accidental injury. The court said:

"Some cases are cited which seem in part to sustain in principle the contention made by counsel on behalf of the defendant, but there is a difference. There would have been no injury if the business had not existed. The heat and humidity, the corrugated sheet iron in the building, the tarred roof, the poor ventilation, and the dust and particles of matter in the air, all acting together, caused the sickness that brought about the death of the decedent. A stronger man might have lived, but it is enough that the industry brought about this man's death. An accident is an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected."

In *State, ex rel. Rau*, v. *District Court of Ramsey County*, 138 Minn. 250 (164 N. W. 916, L. R. A. 1918 F, 918), in discussing a somewhat similar question, the court said:

"The conditions surrounding decedent at the time of his injury exposed him to an unusual danger, different from that to which the masses engaged in like employment were subjected. It had rained the night before; the sand was wet; the sun's rays direct, thereby enhancing liability to sunstroke. Decedent was exposed to the direct rays of the sun, in addition to the humid atmosphere emanating from the wet street."

In *Walsh* v. *River Spinning Co.*, 41 R. I. 490 (103 Atl. 1025, 13 A. L. R. 956), the deceased was overcome by the heat while working in a boiler room, and died soon after. In affirming an award for compensation, the court said:

"When, however, a workman has been injured in the course of his employment by reason of being subjected to certain conditions incident thereto, and not common to the neighborhood or the whole community, then without question the injury was received in the course of his employment and arose out of it."

The term "accidental injury" was considered at some length by the court of appeals in the District of Columbia in *Fidelity & Casualty Co.* v. *Burris*, 61 App. D. C. 228 (59 Fed. [2d] 1042). The deceased was engaged in work on the street, and collapsed from the effect of the heat. The court said:

"As we have already seen, deceased was engaged in manual labor for which he had been employed, and he received the injury from which he died while so engaged. The day was extremely hot. The street was unshaded and the work was incessant, requiring

in its execution constant exposure to the sun's rays. We think we are safe in saying that except for these conditions the injury would not have occurred and death would not have ensued. The very statement of the facts shows undisputably that deceased was exposed to a hazard in the course of his employment that did not apply to the community generally, and whenever this occurs, that is to say, whenever the work exposes the employee to a risk or hazard to which the general public is not exposed, and an injury results therefrom, the injury arises out of and in the course of the employment and is the proximate result thereof, and hence within the terms of the act.''

A number of cases are cited in support of this holding.

In many of the cases the distinction between the construction which should be given to a contract of insurance involving injury caused by accidental means and an accident arising out of and in the course of employment is pointed out, and this was done in the recent case of *Landress* v. *Phœnix Mutual Life Ins. Co.,* 291 U. S. 491 (54 Sup. Ct. 461). In *Robbins* v. *Original Gas Engine Co., supra,* in referring to insurance cases it was said:

"It is doubtful, however, if in applying our statute, its general purpose being considered, the court should exactly follow the rules suggested and applied in the cases referred to.''

The award should be affirmed.

POTTER and BUSHNELL, JJ., concurred with NELSON SHARPE, C. J.

BUTZEL, J.    Notwithstanding the sympathy aroused by plaintiff's condition and the regret that he is not protected by health insurance, we are con-

strained to hold that he is not entitled to compensation. He suffered from heat and sunstroke. This is not within the purview of the compensation act. We do not believe that unusual circumstances differentiate the case from *Doyle* v. *City of Saginaw,* 258 Mich. 467. The employer was not responsible for nor even apprised of the fact that plaintiff only partook of a cup of coffee for breakfast and was obliged to go some distance to secure a conveyance to go to his work. Plaintiff began work at 5:30 a. m. and continued until noon, in all six and one-half hours. The record is somewhat uncertain as to whether he did not have a short rest at noon, and whether it was 2 p. m. or 2:30 p. m. when he collapsed. Assuming, however, that he worked from noon until 2:30 p. m., in all two and one-half hours, this would have made a total of nine hours from the time he began work. This formerly was not considered an unusually long day's work. The case differs entirely from that of *La Veck* v. *Parke, Davis & Co.,* 190 Mich. 604 (L. R. A. 1916 D, 1277), where an employee collapsed after performing an unusual amount of rush work, boiling bouillon on a very hot day in a room that contained retorts and appliances engendering heat. The instant case resembles more that of *Doyle* v. *City of Saginaw, supra,* where we held that sunstroke was not a compensable injury and referred to *Roach* v. *Kelsey Wheel Co.,* 200 Mich. 299, and other cases. See, also, the majority opinion in *Landress* v. *Phœnix Mutual Life Ins. Co.,* 291 U. S. 491 (54 Sup. Ct. 461), handed down by the United States Supreme Court, March 5, 1934, and cases therein cited.

The award is set aside, but without costs.

NORTH, FEAD, WIEST, and EDWARD M. SHARPE, JJ., concurred with BUTZEL, J.