No. 33,349

MARY BUKATA (alias MARY BUKATY), *Appellee*, v. THE METROPOLITAN LIFE INSURANCE COMPANY, *Appellant.*

(67 P. 2d 607)

Opinion filed May 8, 1937.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips* and *Bernhard W. Alden,* all of Kansas City, for the appellant.

*Fred Robertson, Edward M. Boddington* and *J. O. Emerson,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is taken by the defendant insurance company from the order of the trial court overruling its demurrer to the petition of plaintiff in an action to recover an addi-

tional portion of a life insurance policy on account of the death of the insured being accidental by a heat stroke or heat prostration. The appellant states that the one question involved in the appeal is as follows: "Is death resulting from being stricken with heat stroke or heat prostration as alleged, death occurring in consequence of bodily injury effected solely through external, violent and accidental means?"

The policy in this case insuring the husband of the plaintiff was a life insurance policy for $3,000 with two additional provisions: the first for $1,500 more, or $4,500, "if death occur before the insured has attained sixty years of age"; and the other was for $1,500 additional, or $6,000, "if, before the insured has attained sixty years of age and before the allowance of any disability benefit, death occur in consequence of bodily injury effected solely through external, violent and accidental means, provided that such death occur within sixty days after such injury independently and exclusively of all other causes."

The petition set out a copy of the policy, alleged the payment of the premiums and that death occurred before the insured arrived at the age of sixty years, and further contained the following allegations:

"On the 20th day of July, 1934, and while the said insurance policy was in full force and while said Michael Bukata had no active disease and in fact no disease at all, and while he was resting at his home at 226 North Early street in Kansas City, Kan., he was violently, suddenly, unexpectedly and without intention on his part stricken with heat stroke, otherwise called heat prostration, by reason of which and as a part thereof he at once became and remained insensible, unconscious and highly feverish for about two hours and died at about four p. m. of the same day in Kansas City, Kan. His death was effected solely by the bodily injuries produced by and a part of the said heat stroke or heat prostration."

The defendant paid the $4,500, but declined to pay the last $1,500 on the accidental feature.

The only Kansas case cited on the principal question involved is *Casualty Co. v. Johnson,* 74 Kan. 129, 85 Pac. 545. The policy involved in the Johnson case was for loss of time on account of an accidental injury, and it contained the word "sunstroke," and stated that "necessary exposure while engaged in his occupation shall be deemed to be due to external, violent and purely accidental causes and shall entitle the insured to full benefits according to the terms of this policy." (p. 130.) The decision took the advance step

by no longer considering sunstroke as a disease and recognized the new phrase "heat stroke" as equivalent to "sunstroke," and in the opinion it was further stated:

"The provision of the policy is that sunstroke 'shall be deemed to be due to external, violent and purely accidental causes' and shall entitle the insured to indemnity at the full rate. It is argued, not without plausibility, that this language points to a conception of sunstroke as something of sudden and unexpected occurrence, more or less in the nature of an accident, and that this conception is only appropriate to an attack brought on by exposure to the sun's rays. But prostration resulting from heat emanating from a furnace may be as swift in its development and as startling in its effects as though it were occasioned by hot and humid weather. In each case there would be present some of the features of an accidental injury, but neither would justify a recovery upon an ordinary accident policy." (p. 135.)

There was in that case in addition to the effect of the heat of the sun the artificial heat from a forge or furnace, the insured being then engaged in the occupation of a flue welder. This Johnson case differs from the case at bar in three important particulars: first, the action was brought by the insured for disability; second, the word "sunstroke" was contained in the policy; and third, the heat producing the injury was artificial heat from a furnace.

The Johnson case has been frequently cited and made a basis of comment in many cases in other states and in annotations. In 17 A. L. R. 1200 extended comment with approval is made particularly as to an artificial means. In the case of *Farmer v. Railway Mail Ass'n*, 227 Mo. App. 1082, 57 S. W. 2d 744, it was cited with approval where there was artificial heat and the word "sunstroke" was not included in the policy, but the heat prostration of a postal clerk was held to be an accident. In the opinion it was said:

"That sunstroke results from the application of an external physical force can hardly be questioned. The action of the heat rays of the sun upon the body directly or indirectly is as much the action of a physical force as is the blowing of the wind. So that sunstroke, with respect to the manner of its infliction, has all the characteristics of an injury." (p. 1086.)

Another reference to the Johnson case was made in *Ridgeley Protective Ass'n v. Smith*, 42 Ohio App. 417, 182 N. E. 345, where the policy was a life insurance one with additions but did not contain the word "sunstroke," and a workman suffered from heat prostration in handling hot iron, resulting in death. It was there held that his death was not the result of an accidental injury due to violent and external causes. There was also in this case the feature of heart disease, which it is said should have admonished the insured to have

avoided the extreme temperature necessary for the handling of hot iron, which he was doing.

The Johnson case was also cited in the case of *Higgins v. Midland Casualty Co.*, 281 Ill. 431, 118 N. E. 11, where a policeman in his regular line of duty suffered sunstroke. There the word "sunstroke" was included in the policy, and it was held to be under the protection of such accident insurance, it being an accident and not the natural and probable consequence of his course of action.

The case was also cited in *Schumacher v. G. E. C. & I. Co.*, 197 N. Y. 58, 90 N. E. 353, in an action on an accident insurance policy which not only contained the word "sunstroke" but other words denoting blood poisoning, from which he died, and it was held that the special provision made the insurance company liable.

In the case of *Elsey v. Fidelity, etc., Co.*, 187 Ind. 447, 120 N. E. 42, the Johnson case was cited, it being an action on an accident policy which contained the word "sunstroke," and it provided for disability in the way of weekly indemnity where the insured was disabled while riding on an open street car by the direct rays of the sun, and the company was held liable.

The Johnson case was also cited and commented on in the case of *Continental Casualty Co. v. Clark*, 70 Okla. 187, 173 Pac. 453, which was an action on an accident policy which provided for sunstroke. The insured was driving in the country on a dry, hot day. He had gone about six miles and upon the completion of the journey suffered sunstroke from which he died in a few days, and it was held that the company was liable under the contract.

The Johnson case itself is set out in full in 6 L. R. A., n. s., 609, and in 118 Am. St. Rep. 308. It is also cited in the notes of Corpus Juris and Ruling Case Law. It is admitted that although the Johnson case is not exactly applicable, yet no other Kansas decision more nearly approaches a solution of the question involved in the case at bar.

The word "sunstroke" is definitely mentioned in the policies involved in the following cases cited in the briefs in this case: *Continental Casualty Co. v. Pittman*, 145 Ga. 641, 81 S. E. 856; *Harris v. Maryland Casualty Co.*, 2 F. Supp. 188; *Continental Casualty Co. v. Clark*, supra; *Bryant v. Continental Casualty Co.*, 107 Tex. 582, 182 S. W. 673; *Pack v. Prudential Casualty Co.*, 170 Ky. 47, 185 S. W. 496; and *Elsey v. Fidelity, etc., Co.*, supra.

A similar situation is noticeable in the case of *Mather v. London*

*Guarantee & A. Co.*, 125 Minn. 186, 145 N. W. 963, where the accident policy specifically provided that it did not cover sunstroke and a number of other causes of injury or death, but the word "sunstroke" was stricken from that list, and the court held that sunstroke was a casualty covered by the policy.

These matters just mentioned as to the use of the word "sunstroke" in the policy are considered of sufficient importance to be so mentioned because in that regard the policies were different from that in the case at bar, although some of the other features are the same and the rulings on the other features may be helpful in reaching a determination of this case.

Many of the cases cited in the briefs are concerning accident policies whereas the one here under consideration is a life policy with an accidental feature added.

Appellant cites *Lincoln Nat. Life Ins. Co. v. Erickson*, 42 F. 2d 997, where a small abrasion was made in the chin of the insured by a barber. Inflammation developed the next day and on the fourth day the insured died. A distinction was made in this case between accidental results and accidental means, as follows:

". . . the deceased was insured, not against accidental results of intended means, but against death resulting from a bodily injury effected directly through external, violent, and *accidental means*. It may be proper enough, loosely to speak of the death as an accidental one; but the evidence in our judgment fails to show a death resulting from a bodily injury effected directly by accidental means." (p. 1001.)

In the case of *Parker v. Provident Life & Accident Ins. Co.*, 178 La. 977, 152 So. 583, where the insured sustained hernia as the result of pulling a lever handle of a jackscrew, it was held that the injury was not from accidental means in that the insured failed to prove that the hernia was caused solely by external, violent and accidental means.

In the case of *Shanberg v. Fidelity & Casualty Co.*, 158 Fed. 1, the insured carried a heavy door for three blocks during cold weather with snow on the ground, and when he arrived at the place intended he fell dead. The evidence showed that he had a rupture of the heart which had been weakened by "fatty degeneration," and it was held that the death did not "result directly, and independently of all other causes, from bodily injury sustained through external, violent, and accidental means."

In the case of *Kimball v. Massachusetts Accident Co.*, 44 R. I. 264, 117 Atl. 228, the insured had a boil on his neck about where his

collar button would come. He dressed it himself for about a week when it became infected with erysipelas from which he died, and it was held that his death was the result of disease and not of bodily injury effected solely through "accidental means" within the policy.

In the case of *Smith v. Metropolitan Life Ins. Co.*, (La. App.) 155 So. 789, the insured became overheated while performing his regular duties of washing out a boiler, and his death was held not to have been caused by accidental means.

In the case of *Continental Casualty Co. v. Pittman,* supra, the insured was a fireman on a locomotive and was riding on the sunny side of the cab and firing almost constantly. He became overheated, which resulted in his death, and considering it as a sunstroke case the court held that there was nothing to show that the sunstroke was due to external, violent and accidental means within the terms of the policy.

In the case of *Scott v. Met. Life Ins. Co.*, 169 Tenn. 351, 87 S. W. 2d 1011, the insured suffered sunstroke while firing a boiler and died a few hours later. The court held on demurrer to the petition alleging these facts that it did not allege the injury to have resulted through "accidental means," in the absence of allegations that the insured's exposure was other than voluntary and intentional or that the heat from the boiler was unforeseen, unexpected or unusual.

In the case of *Harloe v. California State Life Ins. Co.*, 206 Cal. 141, 273 Pac. 560, the insured suffered a sunstroke while engaged in repairing a water line, which was his usual work. He died subsequently, and it was held that the injury was not exclusively and wholly by external, violent and accidental means within the terms of the policy.

In the case of *Nickman v. New York Life Ins. Co.*, 39 F. 2d 763, the insured being a real-estate dealer spent thirty-five or forty minutes standing near a hot kettle of tar, and later went on the roof a few times. He then went to his office and was overcome by the heat. He was taken to the hospital and died an hour and a half later. The court quoted with approval the following language from the opinion in *Pope v. Prudential Ins. Co. of America,* 29 F. 2d 185, 186:

"There is no occasion to deny that a death, so resulting, may be in a very proper sense an accidental death; but there is obviously a substantial distinction between an accidental result and the result of an accidental cause. We think it not only to be the natural meaning of the words, as they would be understood by the ordinary policyholder, but the right construction thereof,

supported by the weight of authority, that when the insured or those acting with his consent did precisely what they intended to do and in the way which they intended, knowing that injury often did result and might be unavoidable, and where there was no slip or misstep in the performance, and where there was no ignorance of any material factor, this conduct cannot be said to have been the accidental cause of the injury which unfortunately may follow." (p. 765.)

In the case of *Mutual Accident Association v. Barry*, 131 U. S. 100, 9 S. Ct. 755, the insured, together with others who preceded him, jumped from a platform four or five feet high in order to get across the street. He soon appeared ill and vomited and died within nine days thereafter. The court approved the instructions to the jury to the effect that the jumping off the platform was a means by which the injury, if any sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary and unexpected in the act of jumping, that if in the act which preceded the injury something unforeseen, unexpected and unusual occurred which produced the injury, then the injury resulted through accidental means.

In the case of *Paist v. Aetna Life Ins. Co.*, 54 F. 2d 393, the insured died from sunstroke sustained while playing golf on a hot afternoon, and his death was held not to be the result of accidental means.

Special emphasis is placed by the appellant on the ruling of the United States supreme court and the reasons assigned in the case of *Landress v. Phoenix Ins. Co.*, 291 U. S. 491, 54 S. Ct. 461, where the insured was playing golf and suffered a sunstroke from which he died, and it was held:

"A death resulting from sunstroke, the insured having under normal conditions voluntarily exposed himself to the sun while playing golf, is not within the meaning of a policy insuring against death effected solely by external and accidental means.

"That an injury was accidental in the understanding of the average man— that the *result* was something unforeseen or extraordinary—is not enough to establish liability under a policy which limits liability to such injuries as are effected by external accidental means." (Syl. ¶¶ 1, 2.)

In the opinion it was stated:

"The carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. Petitioner's pleadings do not suggest that there was anything in the sun's rays, the weather or other cir-

cumstances, external to the insured's own body and operating to produce the unanticipated injury, which was unknown or unforeseen by the insured. . . . This distinction between accidental external means and accidental result has been generally recognized and applied where the stipulated liability is for injury resulting from an accidental external means. . . . And injury from sunstroke, when resulting from voluntary exposure by an insured to the sun's rays, even though an accident . . . has been generally held not to have been caused by external accidental means." (pp. 496, 497.)

A dissenting opinion was filed in the case, in which it was said:

"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian bog. 'Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident. . . . On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. . . . The proposed distinction will not survive the application of that test.' (p. 499.)

"If there was no accident in the means, there was none in the result, for the two were inseparable. No cause that reasonably can be styled an accident intervened between them. The process of causation was unbroken from exposure up to death. There was an accident throughout, or there was no accident at all." (p. 501.)

In most of these sunstroke or heat stroke cases above cited the courts seem to have regarded the surrounding circumstances as furnishing or not furnishing the accidental means, and if there was nothing in addition to the extreme heat it was not an external, violent and accidental means. A mishap or something unusual other than the weather seems to be regarded as necessary to make the incident involuntary. In other words, the fireman should not have voluntarily ridden on the sunny side of the engine cab and shoveled coal into the engine on such a hot day. The insured should not voluntarily have repaired the water line on such a hot day. The real-estate man should not have watched the construction of the roof on an unusually hot day. Comparatively little weight seems by these several rulings to have been given to the weather as an unusual or accidental means except to charge the insured with the responsibility of having exposed himself during such weather conditions. In the case of the insured playing golf on a hot day, would it have come within the requirement of accidental means if his caddy had that day gone on a strike and sat down so that the insured would have had to carry his bag of clubs? Very little attention seems to have been given to the matter of the weather itself being

unusual and violent as is more easily applied to lightning and freezing, being external, violent and accidental means.

The following quotations are taken from the cases above cited having the word "sunstroke" mentioned in the policy:

"The death of the insured was from sunstroke, which overcame the decedent while he was performing his ordinary duties in the ordinary way upon a hot summer day; and there is nothing in the evidence to show that the sunstroke was due to 'external, violent and accidental means,' within the meaning of those terms as employed in the policy sued upon." (Pittman case, *supra,* p. 642.)

"The purpose of accident insurance is to protect the insured against accidents that occur while he is going about his business in the usual way, without any thought of being injured or killed, and when there is no probability, in the ordinary course of events, that he will suffer injury or death. The reason men secure accident insurance is to protect them from the unforeseen, unusual, and unexpected injury that might happen to them while pursuing the usual and ordinary routine of their daily vocation, or the doing of the things that men do in the common everyday affairs of life." (Elsey case, *supra,* p. 449.)

"According to the construction contended for, the insured would not be protected in any state of case unless the sunstroke happened while the insured was by accident or misfortune involuntarily placed in a position or surrounded by conditions that would subject him to the rays of the sun in an unexpected and unforeseen manner.

"It is of course true that sunstroke suffered in this way would be accidental, but not more so than would sunstroke suffered under ordinary conditions when it could not be reasonably anticipated or foreseen that it would happen.

"The very purpose of accident insurance is to protect the insured against accidents that occur when he is going about his business or attending to his work or affairs in the usual way without any thought of being injured or killed, and when there is no probability, in the ordinary course of human experience, that he will meet with accident or death. The reason why men secure accident insurance is to protect them against unforeseen and unexpected accidents that may happen in the ordinary course of their lives and when they are pursuing in the usual way their daily vocations, or doing in the ordinary way the things that men do in the common, every-day affairs of life.

"Nearly all accidents happen when people are going about their business in the usual way and are voluntarily doing the things before them to do." (Pack case, *supra,* p. 54.)

"The evidence in this case discloses that the deceased was not engaged in any unusual, extraordinary undertaking or any violent or extraordinary physical exertion upon the day he suffered the sunstroke from which he died. He was merely going about his affairs in an ordinary manner engaged on this day as any other person might have been under like circumstances.

"There was no external, violent, and accidental cause which contributed to

the sunstroke suffered in the sense as. contended by plaintiff in error. As, for instance, if the deceased had gone out in a top buggy on the day in question and accidentally run against a limb and knocked the top off, and by reason of this more direct exposure to the sun's rays than was contemplated by him upon the beginning of his journey, this would have been an accidental means which contributed to the accidental result. . . . We do not concur in this view." (Clark case, *supra*, p. 190.)

"A sunstroke suffered while insured was playing golf was within the terms of the policy." (More fully set out in a former opinion.) (Harris case, *supra*, p. 188.)

"One trouble with this position is that it assumes sunstroke was insured against in the policy merely as a disease, when a vital question in the case is whether such was the purpose of the policy. Another is that it denies any standing as 'a means' to that which is essentially the cause, or in any event a very important part of the cause, of every sunstroke, namely, the operation of the rays of the sun if it be the usual form of sunstroke, or the operation of artificial heat if it be induced, as it may be, by other than solar heat, . . . and is alone that which, in common understanding and in fact, makes the cause of a sunstroke 'external and violent.'" (Bryant case, *supra*, p. 586.)

In the case of *Richards v. Standard Acc. Ins. Co.*, 58 Utah 622, 200 Pac. 1017, the insured died from a sunstroke when he was following his regular duties as mine engineer and visiting mines. He was not met with horses, as he had expected, and was compelled to walk a distance on a very hot day, and it was held that the voluntary exposure to the danger of sunstroke would not defeat the right to recover on his policy and he could not be said to have brought the injury on himself. It was further held that the failure to be met by horses, as was arranged, was a mishap and unexpected, yet the sunstroke in and of itself was an accidental means of death.

In the case of *Gallagher v. Fidelity & Casualty Co.*, 148 N. Y. Supp. 1016, it was held:

"As insured while intending to be in the sun did not intend to produce a sunstroke, the sunstroke was an 'accident' which is an event that takes place without one's foresight or expectation, and hence was within the policy, being produced by 'accidental means,' which are agencies that produce effects that are not their natural and probable consequences; the requirement that the sunstroke be produced by accidental means not requiring an accident to precede the sunstroke." (Syl.)

In the case of *O'Connell v. New York Life Ins. Co.*, 220 Wis. 61, 264 N. W. 253, it was held:

"1. The courts, in determining whether prostration satisfies a policy requirement that death or bodily injury be effected solely through external,

violent, and accidental cause, make no distinction between sunstroke and heat prostration.

"2. Within such policy requirement, injuries resulting from heat prostration or sunstroke are not only accidentally effected, but are produced by 'accidental means.'

"3. The term 'accidental means' as used in such a policy requirement must be interpreted according to the usage of the average man." (Syl.)

In the case of *Continental Casualty Co. v. Bruden,* 178 Ark. 683, heat prostration was discussed where the insured was overcome and died after working on a hot engine in the cellar, and it was held to be an injury sustained through external, violent and purely accidental means.

In the case of *Lower v. Metropolitan Life Ins. Co.,* 111 N. J. L. 426, 168 Atl. 592, a workman pursuing his usual avocation on an extremely hot day suffered a sunstroke and died. The death was there held to have come within the requirements of the policy and to be the result of bodily injuries sustained through external, violent and accidental means.

A more recent case than most others cited is *Provident Life & Accident Ins. Co. v. Green,* 172 Okla. 591, 46 P. 2d 372, where a foreman in repairing a railroad track worked hard on a very warm day and as he was leaving the place took hold of an iron bar and collapsed, and his death was held to be fully within the provisions of the policy as to external, violent and accidental means.

A number of other decisions are cited where heat prostration developed into pneumonia or other diseases or became complicated with other diseases, and in them distinctions are nicely drawn as to the accident being a direct and independent cause of the trouble.

It must be admitted that there is a serious conflict in the views expressed as to heat prostration being an external, violent and accidental means. We shall not attempt to harmonize these conflicting opinions. The case at bar is stripped of all possibility of other or dual means, as artificial heat, mishaps or other unexpected incidents which are urged as being the real cause or means of the injury or death in many cases. So all we have to consider in this case is whether or not death resulting from heat prostration has occurred solely through external, violent and accidental means.

We have difficulty in distinguishing between accidental means and accidental results. Of course there is a distinction between the words "means" and "results," but when coupled with the word accidental and attempted to be applied to an injury or death, if

there is any question about the existence of an accident in either there is the same question in the other. A pedestrian on the streets is unintentionally but severely struck by a rapidly moving automobile. The striking is an accidental means. If death or permanent bodily disability be the result, it may be called an accidental result, but there is nothing intervening or separating it from the accidental means—the impact with the automobile. In some of the cases herein cited it was shown that disease had developed after the accident, and in such situation it was neither a case of accidental means nor accidental result.

Much is said in the opinions cited and others about the voluntary or intentional action and conduct of the injured one depriving him of the benefit of claiming the injury occurred solely through accidental means, that he should have abandoned the game of golf, the work on the railroad or other entertainment or enterprise when the weather got very warm. Very few decisions go that far. Applying that theory to the deceased in this case, his only voluntary contribution to his fatal heat stroke was in deciding to remain in the house at his home instead of going to the mountains or the seashore to avoid the hot weather.

It is maintained in some of the cases that a heat shock is not an accident, but it is frequently grouped with lightning and freezing, about which there has ceased to be a debate along that line, and all are considered as very unusual.

We shall refer to the wealth of reasoning in the above quotations rather than attempt to further distinquish between the theories expressed therein or to duplicate them, and we conclude that the allegations of the petition in this case present a case where the death of the insured, stricken with heat prostration, occurred in consequence of bodily injuries effected solely through external, violent and accidental means.

It is said in 17 A. L. R. 1197:

"It is held by the weight of authority, and apparently the better reasoned cases, that a sunstroke, suffered by one unexpectedly, is within the protection of an accident policy insuring against bodily injuries sustained through external, violent and accidental means."

Another point is raised in the petition which we think it is unnecessary to consider, owing to the decision above reached. The plaintiff set out in the petition a copy of a letter written by defendant to plaintiff in which the company refused to pay this in-

surance for a certain reason therein expressed, and plaintiff claimed in the petition that the defendant thereby waived the right to insist upon a different defense from that stated in the letter.

The demurrer to the petition was, we think, properly overruled, and judgment for plaintiff was properly rendered when defendant elected to stand on its demurrer.

The judgment is affirmed.