## NEW YORK LIFE INS. CO. v. COOPER.
### No. 3314.

Circuit Court of Appeals, Tenth Circuit.
Oct. 26, 1946.

Rehearing Denied Dec. 6, 1946.

William H. Martin, of Tulsa, Okl. (William F. Tucker, of Tulsa, Okl., on the brief), for appellant.

Garrett Logan, of Tulsa, Okl. (Villard Martin and Virgil Hicks, both of Tulsa, Okl., on the brief), for appellee.

Before HUXMAN and MURRAH, Circuit Judges, and BROADDUS, District Judge.

---

HUXMAN, Circuit Judge.

The insured, whose death gave rise to this litigation, carried two identical policies of life insurance, except as to the amount of coverage, in the New York Life Insurance Company. The policies were delivered in Kansas and are Kansas contracts. In addition to the regular coverage, the policies provided that the company would pay double the amount of the face thereof if the death of the insured resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause * * *." The insured died as a result of pneumonia which was induced by complete respiratory collapse, which in turn was the result of morphine injections. The company paid the face of the policies, but denied liability for the double indemnity coverage, upon the ground that the death of the insured was not the result of bodily injury effected solely through external, violent and accidental means within the coverage of the policy. Suit was thereupon instituted by the beneficiary and the company has appealed from an adverse judgment.

The facts are not in dispute and are these: The insured suffered a kidney stone attack about 2:00 A. M. September 27, 1942. He had sustained previous attacks over the preceding years and in addition had suffered from chronic sinusitis. Shortly after 2:15 A. M. a doctor arrived at his home and found him in severe pain from the kidney stone. From the time of his arrival until about 4:00 A. M., the doctor administered four one-fourth grain injections of morphine sulphate at thirty-minute intervals. The nurse was instructed to give further injections at three-hour intervals if the patient still suffered pain. The insured continued to suffer intensely, and about 9:00 o'clock A.M., the nurse gave him a one-fourth grain morphine sulphate injection. At 10:00 o'clock the insured was in shock, his respiration had dropped to eight per minute, and his pulse was down to forty-eight. He underwent a period of complete suspension of respiration. The doctor and a pulmotor were called, and at 2:00 o'clock P. M., normal breathing and pulse rate were restored. The respiratory collapse was the result of the administration of morphine sulphate. On September 29, 1942, the insured was admitted to a hospital with symptoms of pneumonia, from which he died. The pneumonia was the direct result of the respiratory collapse.

The hypodermic injections of morphine sulphate were in accord with the usual and accepted practice of the medical profession in cases of this character, and were not an excessive dosage. In at least one prior attack a similar amount had been given the insured with no untoward results. One of the known effects of the drug is depression of the respiratory center of the patient. Used as a pain reliever and sedative, morphine slows the respiration rate as a normal consequence, but entire collapse of the respiratory center is only a bare eventuality.

The trial court found that while complete collapse of the respiratory system may follow the injection of morphine sulphate, such a result is regarded by physicians as only a remote possibility and one that is not to be expected. The court further found that the respiratory collapse of the insured was the unusual, unexpected and unforeseen result of the administration of morphine sulphate. These findings are amply sustained by the record.

Death, then, was the unexpected result of intended means. The appellant company contends that an accidental result of an intended means does not constitute an accident under the double indemnity provisions of these policies. The decisions of the courts are in sharp conflict on this question. A large array of respectable authority is to be found on either side thereof. Appellant's brief cites a large number of decisions of courts from states other than Kansas, which will not be considered by us because this is a Kansas contract and we are bound by the decisions of the Kansas court with respect to the question in issue.

The question then is, what has Kansas held in regard to this question? An examination of the Kansas cases leads to the conclusion that the Supreme Court of Kansas makes no distinction between accidental means and accidental result of intended means. In Bukata v. Metropolitan Life Ins. Co., 145 Kan. 858, 67 P.2d 607, death was

the result of sunstroke. The Supreme Court analyzed at great length numerous decisions dealing with this question, including Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382. It quoted with approval the following language from the dissenting opinion in that case [145 Kan. 858, 67 P.2d 611]: "'The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog,'" and concluded by saying that: "We have difficulty in distinguishing between accidental means and accidental results." The court further considered the question in Spence v. Equitable Life Assur. Soc., 146 Kan. 216, 69 P. 2d 713, 715. Referring to the Bukata case, the court called attention to the fact that in that case it had refused to adopt the distinction between accidental result and accidental means, and stated that: "We are satisfied with the conclusion reached in that case."

■ Appellant, however, urges that this question was not present in the Spence case, and that these statements by the court there are dicta. This position is not well taken. A reading of the Spence case shows that the insurance company there took the position that there was a distinction between accidental means and accidental result of intended means, and that this was the theory upon which the case was tried. The opinion of the court states that: "Pursuing this argument defendant further asserts that the accident complained of in this case, if there was an accident, was not one which related to the means, but that it was only an accidental result." The Spence case was cited and approved by the Kansas court in Zinn v. Equitable Life Ins. Co. of Iowa, Wash., 107 P. 2d 921, 923. The court there states that the Spence case and other cited cases "uphold the idea that death is accidental, even though the means are intentional, where the results are unusual, unexpected, or unforeseen," and states further that: "We feel that the principle of law announced in the cases last cited reflects the great weight of authority and rests upon sound legal principles." There can be no doubt from an analysis of these cases that Kansas makes no distinction between accidental means and accidental results of intended means. We recognized this in Ætna Life Ins. Co. of Hartford, Conn., v. Conway, 10 Cir., 102 F.2d 743, 744, where we said that: "The distinction between accidental means and accidental result [of intended means] is not recognized by the Supreme Court of Kansas." Under the decisions of the Kansas Supreme Court, death in this case resulted from bodily injuries effected solely through external, violent and accidental means, and the company was liable under the double indemnity provision of the policy.

Affirmed.

### On Petition for Rehearing.

The statement in the opinion that the Spence case was cited and approved by the "Kansas court" in Zinn v. Equitable Life Insurance Co. of Iowa, Wash., 107 P.2d 921, is an obvious error, as a casual reading of that case shows that it was decided by the Supreme Court of Washington. While the citation of the Zinn case was not essential to the decision, it is illustrative of the line of reasoning of courts which follow the principle laid down by the Kansas decisions.

■ Appellant in its petition for rehearing complains that we failed to refer to the decision by this court in Preferred Accident Insurance Co. v. Clark, 10 Cir., 144 F.2d 165, upon which it strongly relies. We did not overlook the Clark case nor appellant's contention with respect thereto, any more than we did the many cases from other jurisdictions supporting appellant's position. It may be conceded that the Clark case is indistinguishable in principle from this case, but as we pointed out in the original opinion, this is a Kansas contract and we are controlled entirely by what the Kansas courts have said. The Spence case expressly repudiates the principle of the New York cases and like cases, upon which we relied in interpreting the New York contract in the Clark case,[1] and we are bound thereby. The Supreme Court of Kansas in the Spence case has said, in words too clear to be misunderstood, that the unexpected result of intended means is an accident as that term is understood in double indemnity clauses of insurance con-

---

[1] See Spence v. Equitable Life Assurance Society, 146 Kan. 216, 69 P.2d 713.

tracts. No refinement of reasoning or tenuous argument can becloud this conclusion.

The petition for rehearing is denied.