## MARY WALSH *vs.* RIVER SPINNING COMPANY.

### JULY 5, 1918.

PRESENT:  Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1)  *Workmen's Compensation Act.  Evidence.*

Medical testimony in response to a hypothetical question as to the probable cause of death is admissible in a petition under the Workmen's Compensation Act.

(2)  *Workmen's Compensation Act.  Accident.*

Deceased was employed as a fireman in a boiler room and while at his work, was overcome by the excessive heat and died on the following morning from heat exhaustion.

*Held*, that the unusual and excessive heat producing the sudden inability of the physical system of deceased to longer resist its debilitating effects constituted a chain of circumstances, warranting the finding that deceased received a personal injury by accident arising out of and in the course of his employment.

PETITION under Workmen's Compensation Act.  Heard on appeal of respondent and decree affirmed.

SWEETLAND, J.   This is a petition brought under the Workmen's Compensation Act by Mary Walsh for compensation alleged by her to be due from the respondent on account of the death of her husband, John Walsh, by accident arising out of and in the course of his employment in the service of said respondent.

The petition was heard before a justice of the Superior Court who ordered the entry of a decree in favor of the petitioner.   Said decree contains the finding that said John Walsh while engaged in the employment of the defendant "received a personal injury by accident arising out of and in the course of his said employment, heat exhaustion, while working as a fireman."   The matter is before us upon the respondent's appeal from said decree.

The respondent contends that there was no legal evidence before said justice which warranted the finding that the death of John Walsh was due to heat exhaustion; and further that heat exhaustion is not an accident within the meaning of our Workmen's Compensation Act.

As a part of its first claim the respondent urges that said justice erred in admitting the testimony of a certain medical witness in response to a hypothetical question as to the probable cause of John Walsh's death.   There is no error in said ruling.   The value of the witness's testimony might be questioned in argument before said justice; but its admissibility is clear.   There was evidence before said justice upon which he might find that heat exhaustion was the cause of the decedent's death; and in accordance with the provisions of the Workmen's Compensation Act such finding of fact on the part of a justice of the Superior Court is conclusive upon appeal, in the absence of fraud.

It appears that John Walsh was a fireman employed in the boiler room of the respondent company on September 17, 1915; that the temperature out of doors on that day was warm; that in said boiler room three boilers were being operated; that the temperature of the room was very hot; that the other fireman employed with said John Walsh was obliged to leave his work that day because of the great heat in the room.   The engineer of the respondent testified, that "the load was rather heavy on the boilers" that day, and in answer to the question "when you have a heavy load on like that, what difference does that make in the temperature in the boiler room?", the witness replied, "Well, when you burn more coal you naturally made more heat both in the fire-box and in the boiler room."   In the afternoon of that day while at his work said Walsh was overcome by the excessive heat and was afterwards taken to a hospital where he died on the morning of the following day from heat exhaustion, as was found by said justice.

Upon these facts the respondent urges his second point that the said John Walsh did not die as the result of "a personal injury sustained by accident" within the meaning of our compensation act; that he should be held to have died from the disease of heat exhaustion.   The respondent has cited to us a number of cases in which it has been held that, in the law of accident insurance, heat stroke and sunstroke

are regarded not as accidents but as inflammatory diseases of the brain. It should be observed that there is a distinction properly to be made between the construction which should be given to a contract of accident insurance and a workman's compensation law. In *Fenton* v. *Thorley*, (1903) App. Cas. 443, Lord Macnaghten, speaking with reference to cases on policies of insurance intended to cover injuries described as arising from accidental, violent and external causes, said that he did not consider that they threw much light upon the construction of the workmen's compensation statute for "they turn on the meaning and effect of stipulations for the most part carefully framed in the interest of the insurers. But on the whole they do not, I think, make against the construction which I ask Your Lordships to put on the word 'accident' in the Workmen's Compensation Act." In the same case Lord Lindley, referring to the claim that the compensation statute ought to be construed as if it were a policy of insurance against accident, said: "In an action on a policy the *causa proxima* is alone considered in ascertaining the cause of loss; but in cases of other contracts and in questions of tort the *causa causans* is by no means disregarded."

The respondent has also argued that the question before us is analogous to that involved in certain cases where compensation has been denied for a death resulting from typhoid fever. *Finlay* v. *Tullamore Union*, 7 B. W. C. C. 973 *State* v. *District Court*, 164 N. W. 810. In each of these cases it was held that the infection producing the disease, while perhaps received in the course of the employment, could not be ascribed to any specific time and hence was not within the meaning properly to be given to the expression "accidental injury" or "injury by accident"; for there was no specific occurrence shown in the nature of an accident which set up the disease in the body of the workman. However, in *Vennen* v. *New Dells Lumber Co.*, 161 Wis. 370, a majority of the court held that a workman who had died as the result of typhoid fever, with which he became afflicted

by reason of the presence of bacteria in the drinking water furnished to him by the defendant, should be held to have died of personal injury accidentally sustained within the meaning of the Wisconsin Workmen's Compensation Act. Also in *Ætna Life Ins. Co.* v. *Portland Gas and Coke Co.*, 229 Fed. 552, in passing upon an indemnity insurance policy, the court held that a workman who had contracted typhoid fever from drinking water furnished by his employer suffered from a bodily injury accidentally received by reason of the business described in the policy. The case of *Hood & Sons* v. *Maryland Casualty Co.*, 206 Mass. 223, involved the construction of an employer's indemnity insurance policy. The court held that any employee of the insured who in the course of his employment in the stable of the insured had contracted the disease of glanders had accidentally suffered bodily injury in the operation of the business of the insured. The Massachusetts court applied the rule laid down in certain English Compensation Cases, which are known as the Anthrax Cases, of which we will speak later, and held that "the injury was brought about accidentally within the fair scope and meaning of the policy." In the instant case we are not required to pass upon the question whether a workman, who in the course of his employment has contracted a disease of the nature of typhoid fever or glanders, should be held to have sustained a physical injury by accident; and we express no opinion on that question; but in considering this portion of the respondent's argument we would point out that there is authority for such contention, even upon the analogy of cases involving the law of accident insurance.

The respondent has further urged upon our consideration the claim that the disease of heat stroke should be regarded as in the same class with lead poisoning and other occupational diseases; and it has cited a number of cases to us which hold that such a disease when contracted in the course of a Workmen's employment is not to be regarded as an injury resulting from accident. There are many other cases in the English and American reports which might have been

cited to the same effect. In most of them it has been regarded as an important consideration, as was said by the Supreme Court of Michigan in *Adams* v. *Acme White Lead and Color Works*, 148 N. W. 485, cited on the respondent's brief, that lead poisoning does not arise suddenly and violently, but comes only after long exposure; "in occupational diseases it is drop by drop, it is little by little, day after day, for weeks and months and finally enough is accumulated to produce symptoms." Although the Michigan court held that their compensation act did not provide recovery for industrial or occupational diseases, because such diseases did not arise from accident, that court did hold in *La Veck* v. *Parke Davis & Co.*, 157 N. W. 72, that a workman who suffered paralysis resulting from the rupture of a small blood vessel in the brain caused by over exertion in a room where a high degree of heat was required was entitled to compensation for accident within the Workmen's Compensation Act, and held further that *Adams* v. *Acme White Lead and Color Works*, *supra*, was not controlling.

The word "accident" is not one of precise meaning as that word is used in the various compensation acts. In the case of *Hensey* v. *White* (1900) 1 Q. B. 481, the Court of Appeal had applied the word "fortuitous" to the term "injury by accident." In *Fenton* v. *Thorley* (1903) App. Cas. 443, in the House of Lords, Lord Macnaghten said that the use of the word "fortuitous" was to be regretted. If it introduced the element of haphazard it was misleading and not warranted by anything in the act; and he came to the conclusion that "the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed." In the same case to the same point Lord Shand held that the word "denotes or includes any unexpected personal injury resulting to the workman in the course of his employment from any unlooked for mishap or occurrence." Lord Lindley in the same case said that it was not a technical, legal term with a clearly defined meaning;

that "with reference to legal liability an accident means any unintended and unexpected occurrence which produces hurt or loss." All of these attempted definitions of the word come to the same thing. In the House of Lords the meaning of the word was further discussed at great length in very elaborate expressions of opinion in *Trim Joint &c.* v. *Kelly* (1914) App. Cas. 667. This was a case which concerned the right of the dependent of an assistant master at an industrial school to receive compensation for the death of said master, who had been assaulted and killed by two pupils of said school in pursuance of a premeditated plan of attack. The finding that the occurrence was an accident which arose out of and in the course of the deceased's employment was affirmed in the House of Lords. In their opinion Viscount Haldane, L. C., and others, held that when Lord Macnaghten in his definition in *Fenton* v. *Thorley, supra*, spoke of an occurrence not designed he meant undesigned by the injured person. A contrary view was expressed by Lord Dunedin and others. Lord Redding in this case gave it as his opinion that the words "injury by accident" mean "an injury caused to the workman by some sudden and unexpected occurrence, whether the injury was inflicted by design or otherwise, as distinguished from an injury caused to him by some gradual process. For example, if a workman became blind in consequence of an explosion at the factory that would constitute an injury by accident; but if in consequence of the nature of his employment his sight was gradually impaired and eventually he became blind, that would be an injury, but not an injury by accident." Lord Redding by the use of the expression "sudden and unexpected," and by his illustration, appears to put emphasis upon the element of suddenness and lack of warning in the occurrence. All of this extended discussion of the meaning of the term in question appears to have reflected the elaborate arguments of the bar of which Lord Robertson said, in *Fenton* v. *Thorley, supra,* "Much poring over the word 'accident' by learned counsel has evolved some subtle

reasoning about these sections.   I confess that the argument seems to me to be entirely over the heads of Parliament, of employers and of workmen." From all this discussion, however, covering many pages in the reports, the conclusion of Lord Macnaghten, which in a later case he referred to not as a definition but merely a decision that the word was to be taken in its ordinary and popular sense, has been accepted as, on the whole, the best interpretation of the expression. Applying that interpretation to the facts of the case at bar, it appears to us, that the unusual and excessive heat in the boiler room, producing the sudden inability of the physical system of John Walsh to longer resist its debilitating effects, constituted a chain of circumstances which may fairly be regarded as an unlooked for mishap not designed and undoubtedly unexpected.   If by reason of the condition of the floor of the boiler room the deceased had slipped and had fallen, as a result of which a disease had developed in his brain causing his death, we think no one would have questioned that his injury was produced by accident.   Can it reasonably be regarded as otherwise when by reason of the high temperature of the air in said room his physical and mental stability is overthrown, and a physiological derangement is set up which causes his death?   The respondent has claimed that the effect of the heat upon said Walsh was not sudden, for he complained of it in the forenoon.   That he should have been made uncomfortable by the heat was to be expected; but the collapse of his physical resistance may fairly be said to have been sudden.   We think that in thus viewing the occurrence we have not confounded the injury with the accident.   The untoward event which in this case produced the disability from which John Walsh died was the aggregate of the circumstances culminating in the breaking down of his physical stamina.   As was pointed out by Lord Lindley, in *Fenton* v. *Thorley, supra*, the word "accident" is often "used to denote an unintended and unexpected loss or hurt apart from its cause; and if the cause is not known the loss or hurt itself would certainly be

called an accident. The word 'accident' is also often used to denote both the cause and the effect, no attempt being made to discriminate between them."

The facts in this case are somewhat analogous to the situation discussed in the so-called Anthrax Cases. Anthrax is a disease from which sheep and goats suffer. The germ of the disease is frequently conveyed in the fleece of the sheep when it has been sheared and sent to the woolen factory. In *Higgins* v. *Campbell*, 6 W. C. C. 1, it appeared that the complainant was a workman in a wool-combing factory; in the course of his employment he became infected with the Anthrax germ and the disease developed. The judge of the Bradford County Court denied the workman's claim for compensation on the ground that the disease was not an injury by accident. In *Turvey* v. *Brintons*, 6 W. C. C. 1, it appeared that the husband of the applicant was a workman employed as a wool sorter and, while so engaged in handling bales of Persian wool, a bacillus or germ of Anthrax settled in the corner of his eye and caused an outbreak of the disease from which he died. The judge of the Kidderminster County Court held that the death was caused by an accident and awarded compensation. Both awards came to the Court of Appeal and were disposed of together. The Court of Appeal applying the conclusion of Lord Macnaghten set out *supra*, as to the interpretation which should be given to the word "accident," held that the catching of Anthrax, in the circumstances of each of the cases before it, should be regarded as "an unlooked for mishap" or "an untoward event which was not expected or designed." An appeal from this judgment of the Court of Appeal in the case of *Turvey* v. *Brintons* went to the House of Lords and was there dismissed. 7 W. C. C. 1. In his opinion the Earl of Halsbury, L. C., said: "we must be on our guard that we are not misled by medical phrases to alter the proper application of the phrase 'accident causing injury,' because the injury inflicted by accidents sets up a condition of things which medical men

describe as a disease." . . . "It does not appear to me that by calling the consequences of an accidental injury a disease one alters the nature or the consequential results of the injury that has been inflicted." In the same case Lord Macnaghten said, "The accidental character of the injury is not, I think, removed or displaced by the fact that, like many other accidental injuries, it set up a well known disease, which was immediately the cause of death, and would no doubt be certified as such in the usual death certificate."

In his argument and brief the attorney for the respondent has classed heat stroke and sunstroke together and has urged that neither should be regarded as an accident, but that each is an inflammatory disease of the brain. The word "accident" as usually interpreted in compensation statutes would in most circumstances properly be applied to both mishaps. Both are within the popular and ordinary conception of an accident. And the injury arising from either may be regarded as having been accidentally received. But as stroke by lightning, frostbite and the like, are due to certain forces of nature to which all are alike exposed, a workman suffering disability from the action of either of such forces while engaged in his work, though he is suffering an injury caused by accident in the course of his employment, cannot properly be regarded as suffering an accidental injury "arising out of his employment." In a number of cases, however, where by reason of the nature of his occupation the workman is especially liable to injury from either of these forces, compensation has been allowed.

In *Andrew* v. *Failsworth*, 6 W. C. C. 11, it appeared that a bricklayer while working on a scaffolding twenty-three feet above the ground was struck by lightning and killed. The county court judge held that, because the elevated place where the deceased man was working increased the risk of his being struck by lightning, the accident arose "out of" the employment. The judge awarded compensation. This award was approved in the Court of Appeal. In *Morgan* v. *Owners of Zenaida*, 2 B. W. C. C. 19, it ap-

peared that a seaman while on ship in a Mexican port was sent over the side to paint the vessel. The heat at that place was excessive and he was seized with sunstroke. The medical evidence was that while in this position the seaman was running greater risk than when ordinarily employed on deck as he was subjected not only to the direct rays of the sun but also to the reflected rays from the ship's side. In these circumstances the county court judge was of the opinion that the man was suffering from an accident which arose "out of" and in the course of the employment and made an award in his favor. Upon appeal the Court of Appeal refused to disturb the award of the county judge. In all cases of this character, involving injury by accident arising out of the action of the forces of nature, the controlling consideration has been whether or not the situation of the injured workman was such that the injury by accident can properly be said to arise "out of" his employment. When however a workman has been injured in the course of his employment by reason of being subjected to certain conditions incident thereto and not common to the neighborhood or the whole community, then without question the injury was received in the course of his employment and arose out of it. Of this nature were the injuries received by John Walsh in the case at bar. The view which we have taken, that such injuries may properly be considered as accidental, is supported by a number of cases which deal with heat-stroke. A leading case of that kind is *Ismay, Imrie & Co.* v. *Williamson*, 1 B. W. C. C. 232. This case came to the House of Lords upon appeal from an order of the Court of Appeal in Ireland which had awarded compensation to the applicant. The husband of the applicant while at work in the stokehole of the Steamship "Majestic" fell in a faint as the result of an attack of heat stroke. He was taken to the hospital and died soon after. Lord Loreburn, L. C., said, "In the case of *Fenton* v. *Thorley* the meaning of the word 'accident' was very closely scrutinized. That case stands as a conclusive authority and I would not depart from it if I could nor need I repeat what was there

said. The only question is of applying the law there laid down to the particular facts of this case. In my view this man died from an accident. What killed him was a heat stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause often no doubt threatened, but generally averted by precautions which experience in this instance had not taught. It was an unlooked for mishap in the course of the employment. In common language it was a case of accidental death. I feel that in construing this Act of Parliament, as in other cases, there is a risk of frustrating it by excess of subtlety which I am anxious to avoid." In *Johnson* v. *Owners of the Ship "Torrington,"* 3 B. W. C. C. 68, the finding by a county court judge that a fireman on board ship, exposed to heat in the stokehole and seen frequently drinking water there, died of cerebral hemorrhage brought on by the condition of his work, his exposure to heat and the drinking of water, was not disturbed by the Court of Appeal. In *Maskery* v. *Lancashire Shipping Co.,* 7 B. W. C. C. 428, it appeared that the deceased was an engineer, who while working in the engine room of a steamship in the Red Sea sustained a heat stroke from the effects of which he died. The county court judge held that the employment of an engineer in the Red Sea exposed him to risk of heat stroke an occurrence which in its nature was fortuitous; that the man's death therefrom was due to an accident arising out of and in the course of his employment. The award of compensation was approved by the Court of Appeal. To the claim that the heat was due to natural causes, because the Red Sea is always very hot, the Master of the Rolls said evidence would not be required to prove that the engine room would be a place hotter than the open air. See also *La Veck* v. *Parke Davis & Co.,* 157 N. W. 72, *supra.*

The decree of the Superior Court is affirmed and the cause is remanded to that court for further proceedings.

*Lester T. Murphy,* for petitioner.

*Gardner, Pirce & Thornley,* for respondent.