**LANG v. METROPOLITAN LIFE INS. CO.**
No. 7258.

Circuit Court of Appeals, Seventh Circuit.

Oct. 31, 1940.

Nathaniel Rubinkam and Albert E. Hallett, Jr., both of Chicago, Ill., for appellant.

Arthur F. Gruenwald, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, the beneficiary in an accident insurance policy on the life of William C. Lang, her brother, sued defendant, claiming that the insured's death was caused by accident. A jury returned a verdict for the plaintiff, the District Court entered judgment thereon, and the defendant appealed.

The policy specifically provided that it did not cover death caused wholly or partly, directly or indirectly by disease or bodily infirmity, but did insure the deceased against the results of bodily injuries caused directly and independently of all other causes by violent and accidental means. The insured died on December 31, 1937, while the policy was in full force and effect. The defense is that the death of the insured was not covered by the provisions of the policy and that insured died from heart failure and not from injuries.

William C. Lang, a lieutenant of police, in good health and working steadily every day, was 46 years of age, 6 feet tall and weighed 220 pounds. During the afternoon of December 31, 1937, he made no complaints as to his health and that evening he prepared his own dinner. After he ate his dinner he went on special duty at the Edgewater Beach Hotel where he had charge of the police. While there, at about 9:00 o'clock and again at 9:30, in answer to an inquiry as to "how he was," he stated "Not so hot," patted himself in the region of his abdomen, or near his chest, and said: "Well, I am glad I have got my twenty years behind me. I can take a long rest now." This remark referred to his retirement from the police force. Later he spoke to a group of police officers, saying he had pains in his chest, was not feeling well, and that he had taken Alka-Seltzer, without relief. Between 10:00 and 11:00 P. M. he drank, at the hotel drug store, a glass of carbonated water with bicarbonate of soda.

After his return from the drug store at 11:40 P. M. he stated he would take a walk and started walking north in a hallway about 25 feet wide, having a marble flooring. In the center of this hallway were two heavy oval shaped rugs about half an inch in thickness. At that moment one Harvey, a bell-boy at the hotel, was walking to the south, toward Lang, and officer West was sitting about 15 feet from Lang at the time Lang commenced to walk to the north. The evidence then discloses that after Lang had walked about 15 feet he lurched and fell, face forward. Harvey testifying said: "Before I could reach him he hit the floor. He fell face forward. He fell on the rug. His feet were at the edge of the rug. He was bleeding."

Officer Frank A. West's testimony was to the effect that he actually saw Lang fall frontwards and that his face hit the floor. His feet were on the marble. His head was on the rug. He was bleeding profusely from the face and mouth. He was gasping and bleeding. Blood was coming out of his mouth and nose. The doctor came in about five minutes after he fell and within five minutes thereafter Lang was dead.

Jay Jones, resident manager of the Edgewater Beach Hotel on December 31, 1937, testified that the upper part of Lang's body was lying on the marble floor, face down.

It further appears that when Lang fell he suffered bruises causing a fracture and smashing of his nose, a nasal hemorrhage, biting of his tongue, and that after the fall he was gasping for breath.

Paul Schmitt, a physician admitted to practice medicine and surgery in Illinois since 1923 and Coroner's physician for Cook County, Illinois for 12 years, testified that he performed an autopsy on Lang and found abrasions of the left temporal and zygomatic region and on the nose. The nose was fractured. On opening the body the viscera, heart, lungs, kidneys, liver and organs were found to be in a good healthy condition, except the lungs—there, in the alveoli, he found a small hemorrhage; he also found there had been a hemorrhage in the nasal passages with considerable loss of blood; that the brain was normal; and that there was nothing abnormal about the heart. He further testified that Lang had not come to his death from heart failure, heart disease.

In answer to a hypothetical question he stated that it was his opinion that Lang came to his death from nasal hemorrhage due to a fracture of the nose and that he

found no underlying cause for the nose bleed, except the fracture.

A second autopsy on behalf of the defendant was performed by Dr. Jerry J. Kearns on April 14, 1938, in the presence of Doctors Josiah J. Moore, Louis H. Mishkin and Schmitt.

Dr. Moore testified that he specialized in pathology and that he had performed or attended about 3,000 post-mortems; that Lang's papillary muscles were enlarged, but were normal in size for his age and weight; that the vessels carrying blood to the heart had smooth walls and that the lumina was wide open. The aorta was smooth, showing a few spots termed arteriosclerosis, but not an unusual thickening for a man of his age.

He further testified that there had been a hemorrhage in the nose extending from the tip of the nose clear up to the eyes into the soft tissues and the cartilage of the nose was separated by a fracture of the nasal bone.

He also testified that he found no abnormal condition in any of the organs which would lead him to believe that Lang had died of a disease or defective condition of any organ, and gave it as his opinion that Lang had died from hemorrhage as a result of the fracture of the nose.

On behalf of the defendant Dr. Jerry J. Kearns, a physician since 1926 and a specialist in pathology, testified that he had made a post-mortem examination on Lang's body in the presence of Doctors Mishkin, Moore and Schmitt almost four months after his death; that this delay did not make any difference because the body organs were well preserved; that the nasal bones showed no evidence of injury, the bones of the nose were not broken, and that the condition of Lang's nose had nothing to do with his death; that the heart was enlarged and that there were scars or defects in the muscles of the heart ⅛ to ½ inch in size; that they were old scars; that the valves of the heart and the blood vessels of the heart showed slight changes in the direction of hardening of the arteries; that the papillary muscles contained two types of scars, one type was two years old and the other six months to one year old; that these indicate defects in the muscles; that the heart was enlarged, indicating that the efficiency of the heart was not adequate to maintain circulation to the appropriate degree; that in the chamber of the heart on the left side,

adhering to the wall, was a blood clot called a thrombus, which occurs in a blood vessel when the lining of the vessel is injured; that the blood clot occurred during lifetime; and that he found congestion of the blood vessels and what are known as "heart failure cells," which occur when circulation is not adequate.

He further testified that it is possible for a person to die of nasal hemorrhage, but that it would take from 3 to 24 hours for one to empty himself sufficiently to cause death, and he gave it as his opinion that Lang came to his death as a result of chronic heart failure.

The record also discloses that Doctors Mishkin, Louis C. French and Carl W. Appleback testified in behalf of the defendant, challenging plaintiff's medical testimony and giving it as their opinion that Lang had died of organic heart disease.

Now, upon this record, the defendant contends that the evidence does not establish that Lang's fall and death was caused by accidental means, and counsel insists that Lang did not slip, stumble or suffer an accident which caused him to fall; that he merely collapsed while walking across the hall, and the mere fact that he fell and death occurred does not establish that such fall resulted from accidental means. He also claims that Lang died from heart failure or heart disease and not from injuries.

We have already held the true rule in Illinois to be, that if an act is performed with the intention of accomplishing a certain result, and if in the attempt to accomplish that result another result, unintended and unexpected and not the natural and probable consequence of the intended act, in fact occurs, such unintended result is caused by accidental means, Mangol v. Metropolitan Life Ins. Co., 7 Cir., 103 F. 2d 14, and we agree with the Court in Mansbacher v. Prudential Ins. Co. of America, 273 N.Y. 140, 7 N.E.2d 18, 20, 111 A. L.R. 618, that death occurring through "accidental means" is the same as death occurring "by means of an accident." We therefore conclude that under the facts and circumstances here, the plaintiff's case comes within the terms of the policy, and the District Court did not err in submitting the case to the jury.

The next question to be considered is whether Lang's death occurred as a result of the injuries received in the accident,

directly or independently of all other causes. The question as to what was the cause of death, was one of fact, Christ v. Pacific Mutual Life, 312 Ill. 525, 144 N.E. 161, 35 A.L.R. 730, Prehn v. Metropolitan Life Ins. Co., 267 Ill.App. 190, Rebenstorf v. Metropolitan Life Ins. Co., 299 Ill.App. 71, 19 N.E.2d 420.

In considering this contention it is well to keep in mind that it is the duty of the jury to pass upon the credibility of the witnesses and the weight of the testimony and if the jury believed the testimony of the witnesses for the plaintiff to be true, then it was its province to find that Lang's death occurred as a result of an injury received in an accident directly and independently of all other causes.

After due consideration of the record we have reached the conclusion that there was sufficient evidence to support the verdict. It must therefore prevail.

The judgment will be affirmed.