## WILSON v. NEW YORK LIFE INS. CO.
### No. 1463.

United States District Court
D. Idaho, E. D.
Feb. 2, 1949.

Ben W. Davis, of Pocatello, Idaho, for plaintiff.

A. L. Merrill, of Pocatello, Idaho, and J. L. Eberle, of Boise, Idaho, for defendant.

CLARK, District Judge.

The plaintiff Cecelia J. Wilson brought this action to recover for the alleged accidental death of her husband, Harry Wilson.

Harry Wilson, the deceased was a resident of the State of Idaho at the time the defendant New York Life Insurance Company, a corporation of New York, on or about the 19th day of May 1928, issued its certain policy of insurance, being policy No. 10255251, the policy insuring the insured for $5,000 payable to his beneficiary upon proof of his death and $10,000 or double the face of the policy if death resulted from accident. This action is for the recovery of the double indemnity of $5,000 for the alleged accidental death.

The policy provided for double indemnity if "the death of the Insured resulted directly and independently of all other causes from bodily injury affected solely through external, violent and accidental means

* * *". "Double indemnity shall not be payable if the insured's death resulted * * * directly or indirectly from illness or diseases or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury * * *"

The insured died on the 8th day of April, 1947 from "acute pulmonary embolism". This is defined at page 12 of the transcript of the testimony, by Doctor O. F. Call, attending physician at the time of Mr. Wilson's death, as a "foreign substance or piece of a clot flowing in the blood stream which goes through the heart, through the pulmonary artery to such a place that it can't go any farther and lodges in the pulmonary artery or branch of it. It can be a clot of blood, a fatty or foreign substance."

The circumstances preceding Mr. Wilson's death as disclosed by the evidence, are as follows: He was in ordinary good health of the average man; he was about sixty years of age; he was troubled to some extent by high blood pressure. He had undergone an operation some years ago for a bowel obstruction; the record does not disclose when this operation was performed but it was prior to an operation for hernia that was performed some four years prior to his death. On the morning of April 7, 1947 he was again operated upon for recurrent inguinal hernia. Immediately following the operation he was returned to his room in the hospital in apparently good condition. After the operation on the morning of April 7, opiates and sedatives were administered, which were a part of standard and recognized treatment. The opiates so administered caused deep heavy snoring, choking and coughing and although Mr. Wilson was a heavy snorer when sleeping under natural conditions, this medication caused the choking and coughing and snoring to become more violent, causing the pulmonary embolism from which death resulted at 5 o'clock A.M. April 8, 1947, about twenty hours after the operation. The result of the administration of the opiates was entirely unforeseen and unexpected; there was nothing to indicate, at the time of their administration, that he would develop this extraordinary condition, snoring or heavy breathing and the coughing and choking causing the embolism. Doctor Call testified that in his experience in operations this condition that developed in reference to the snoring, choking and breathing was most extraordinary and not to be expected or foreseen; the record discloses the following questions and answers in the testimony of Doctor Call:

"Q. I call your attention to the definition in Webster's International Dictionary of accident; that defines an accident as 'a befalling; an event that takes place without one's foresight or expectation, an undesigned, sudden and unexpected event; chance; contingency, often an undesigned and unforeseen occurrence of an afflictive or unfortunate character, a casualty, a mishap, as, to die of accident.' Now, Doctor, I will ask you if the event of the patient's death under the circumstances, in your opinion, was an event that took place without foresight and expectation? A. It was.

"Q. Was it undesigned, sudden and unexpected? A. It was.

"Q. Was it a chance? A. It was.

"Q. Due to contingency? A. It was.

"Q. Was it an undesigned and unforeseen occurrence of an afflictive or unfortunate character? A. It was.

"Q. Was it a casualty? A. It was.

"Q. Was it a mishap? A. It was.

"Q. Did he die in your opinion, by accident? A. He did.

"Q. Now, with reference to this condition, this unexpected condition that occurred there with reference to the choking and snoring, was that an event that took place without foresight and expectation? A. That's right.

"Q. Was it undesigned? A. It was.

"Q. Was it a chance? A. It was.

"Q. A contingency? A. Yes sir.

"Q. Was it an unforeseen and undesigned occurrence of an afflictive or unfortunate character? A. It was.

"Q. And was it a mishap? A. Yes sir, certainly.

"Q. In your opinion it was the direct cause of the man's death. The main cause,

294

and the principal and moving cause of the man's death? A. Yes sir."

The deceased died unexpectedly, there was nothing in his operation, and he gave no indicative history or evidence that the calamity that befell him was likely to happen.

■ Plaintiff having established the death was accidental the burden shifts to the defendant and it must allege and prove that recovery is barred by the limitations qualifying the general clause hereinbefore set forth.

"Where the insurer seeks to avoid liability by reason of an alleged breach of the conditions of the policy, the burden rests upon it to show such breach; and, where it seeks to avoid liability on the ground that the accident or injury is within one of the exceptions in the policy, the burden rests upon it to prove facts bringing the case within the exception." O'Neil v. New York Life Insurance Co., 65 Idaho 722, 152 P.2d 707, at page 711.

■■ In meeting this burden it must be remembered that the limitation clause is to be construed most favorable to the insured. The rule is that insurance policies must be construed strongly against the insurer and in favor of the insured and that where there are two constructions that may be placed upon the meaning of an accident policy, one of which will permit the insured to recover and the other not permitting such recovery that the policy must be construed so as to permit recovery. The most widely cited rule is the one set forth by Ex-President and former Chief Justice Taft (Court of Appeals 6th Circuit), in the case of Manufacturer's Accident Indemnity Co. v. Dorgan 58 F. 945, 956, 22 L.R.A. 620, he said: "It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company, strongly against the company. Policies are drawn by the legal advisers of the company, who study with care the decisions of the courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore,

which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer." This statement has been cited with approval by the Court of appeals of this, the Ninth Circuit in the case of Jensma v. Sun Life Assurance Co. of Canada et al., 64 F.2d 457.

■ Recovery in this case depends on the limitation in the policy hereinbefore set forth. The term accidental means in some jurisdictions has been held to clearly limit the policy's meaning to cause alone, however the better rule and the rule followed in this jurisdiction is that the term "accidental means" and the term "accidental results" and "accidental death" are regarded as legally synonymous. Jensma v. Sun Life Assurance Co. of Canada et al., supra; Rauert v. Loyal Protective Insurance Co., 1940, 61 Idaho 677, 106 P.2d 1015; O'Neil v. New York Life Insurance Co., supra.

We have here a result that was unforeseen, the opiates were introduced into the body of the insured without any thought that such a result would follow, the result being unforeseen and wholly unexpected and unanticipated.

Death is inevitable, every man lives more happily and secure if he feels that he has insurance to take care of those who are near and dear to him, after he has departed this life. It is well known, as suggested in the case of Rauert v. Loyal Protective Insurance Co., supra, that the ordinary man is not versed in the construction of contracts. He simply says to the life insurance agent, "I want this security for my family", he does not prepare, nor does he have his lawyer prepare the written contract; he pays the money for this insurance. The contract is prepared beforehand by the insurer. I think it can be said without contradiction that the provisions of the policy are not discussed, they simply tell the agent the protection they desire. The policy is all written out in printed form and following the main provisions of the policy the limitations are provided. In other words, the first part of the policy gives and the second part of the policy takes away, and the ordinary person who is not trained to interpret contracts is generally not in a

position to understand the details, terms and meanings of the limitations. In fact, as is so often said, the insured seldom sees the policy until it has been issued and delivered to him and then after he receives it he puts it in his desk or safe and the first time it is read is by his beneficiaries after his death. Many of its terms and all of its defenses and super limitations are difficult to understand. If justice is to be done the courts must adopt a rule of construction in favor of the insured to accomplish the purpose for which the insurance was taken out and for which the premiums were paid.

This Court follows that rule not only because it is the rule in this jurisdiction but because it is the just rule.

The Court is of the opinion that the defendant has failed to bring itself within the exception relied upon to defeat recovery and is further of the opinion that the result that followed the administration of the opiates was not natural or probable and should not reasonably have happened and under all the circumstances the result was tragically out of proportion to the trivial cause, and that the plaintiff is entitled to recover under the terms of the policy.

The plaintiff's counsel may prepare the necessary findings, conclusions and judgment to conform with this opinion, copy will be served on counsel for the defendant and the original presented to the Court for approval.