Vivian Hoy RALEY, Appellant,

v.

LIFE AND CASUALTY INSURANCE COM-
PANY OF TENNESSEE, a corporation,
Appellee.

No. 1671.

Municipal Court of Appeals for the
District of Columbia.

Argued Aug. 8, 1955.

Decided Oct. 6, 1955.

Thomas M. O'Malley and Joseph F. Salis-
bury, Washington, D. C., with whom
Michael F. X. Dolan, Washington, D. C.,
was on the brief, for appellant.

Kenneth Wells Parkinson, Washington,
D. C., with whom Roger Robb, Washington,
D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and
HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The question on this appeal is whether
an industrial accident insurance policy cov-
ered death caused by sunstroke. The action
was brought by appellant as widow and
beneficiary under the policy, which was
written on the life of Thomas F. Hoy. It
was stipulated that Mr. Hoy collapsed at an
intersection in Arlington, Virginia, on a
June afternoon in 1952, and was taken to a
hospital where he died several hours later.
It was also stipulated that the "sole and ex-
clusive cause of the death of Thomas F.
Hoy was exposure to the sun's rays, that is
to say, sunstroke." An official weather
report, submitted under the same stipula-
tion, revealed that an extreme heat wave
was in progress in this locality at the time
of the mishap. The trial court ordered
judgment for the insurance company and
plaintiff brings this appeal.

The policy insured "against loss of life
through accidental means" and recited,
"[i]f the insured sustains drowning or
bodily injury effected solely through vio-
lent, external and accidental means, and if
such drowning or bodily injury is the di-
rect, independent and proximate cause of
the death of the insured within 90 days
from the date of such injury, and if such
death is not caused or contributed to by dis-
ease or infirmity, the Company will on sur-

render of the policy pay the principal sum specified herein. * * *"

▇ It seems clear, as the insurance company concedes, that because the policy was executed and delivered in this jurisdiction, the rights of the parties are to be decided according to District of Columbia law. Levin v. John Hancock Mut. Life Ins. Co., D.C.Mun.App.1945, 41 A.2d 841, and cases there cited.

Urging us to declare that under the law of this jurisdiction a policy of this kind does not cover death caused by sunstroke, appellee insurance company relies on Landress v. Phoenix Mut. Life Ins. Co., 1934, 291 U.S. 491, 54 S.Ct. 461, 462, 78 L.Ed. 934. There the Supreme Court, in a sunstroke case, said: " * * * the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. * * *" The court ruled that the insurance company was not liable.

If the language just quoted must be regarded as governing all situations of this kind, the answer in this case would be plain and the beneficiary would be out of court. (We later discuss the dissenting opinion of Cardozo, J., which has been widely quoted and generally approved.)

But the answer is not so simple, for a number of reasons. First, we must consider that four years after the Landress case, supra, came the far reaching decision in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188. There the Supreme Court overruled the hundred-year-old doctrine of Swift v. Tyson, 1842, 16 Pet. 1, 10 L.Ed. 865, and held that there is no federal general common law and that Congress and the federal courts as well are without power "to declare substantive rules of common law applicable in a state whether they be local in their nature or

'general,' be they commercial law or a part of the law of torts." The court went on to rule specifically that the common law so far as it is enforced within a State is not the general common law, but the law of that State as declared by its legislature or its highest court.

Thus whatever the effect of the Landress decision in the State of Tennessee where the case arose, it cannot be said to have declared general common law or to be binding on State or Federal courts generally. A large number of Federal as well as State courts have departed from the view expressed in Landress and expressly ruled that death by sunstroke is a death caused by accidental means and is not merely an accidental result. The decided trend of recent decisions establishes that the majority view today is that sunstroke is covered by this type of policy, and that disability or death induced by sunstroke [1] is caused by "accidental means." Typical of such sunstroke cases are the following: Paul Revere Life Ins. Co., Worcester, Mass. v. Stanfield, 10 Cir., 1945, 151 F.2d 776, certiorari denied 327 U.S. 795, 66 S.Ct. 825, 90 L.Ed. 1021; New York Life Ins. Co. v. Griesedieck, 8 Cir., 1941, 116 F.2d 559, certiorari denied 312 U.S. 704, 61 S.Ct. 809, 85 L.Ed. 1137; Wiecking v. Phoenix Mut. Life Ins. Co., 7 Cir., 1940, 116 F.2d 90; Huss v. Prudential Ins. Co. of America, D.C.D.Conn.1941, 37 F.Supp. 364; Harris v. Maryland Casualty Co., D.C.W.D.Pa.1931, 2 F.Supp. 188, reversed on other grounds, 3 Cir., 60 F.2d 810; United States Fidelity & Guaranty Co. v. Hoflinger, 1932, 185 Ark. 50, 45 S.W.2d 866; Continental Casualty Co. v. Bruden, 1928, 178 Ark. 683, 11 S.W.2d 493, 61 A.L.R. 1192; Higgins v. Midland Casualty Co., 1917, 281 Ill. 431, 118 N.E. 11; Bukata v. Metropolitan Life Ins. Co., 1937, 145 Kan. 858, 67 P. 2d 607; Brackman v. National Life & Accident Ins. Co., La.App.1942, 5 So.2d 565; Elbe v. John Hancock Mut. Life Ins. Co., Mo.App.1941, 155 S.W.2d 302; Layton v. Metropolitan Life Ins. Co., Mo.App.1936, 89 S.W.2d 576; Farmer v. Railway Mail Ass'n,

---

1. We note, parenthetically, that courts generally make no distinction between sunstroke and heat exhaustion.

1933, 227 Mo.App. 1082, 57 S.W.2d 744; Lower v. Metropolitan Life Ins. Co., 1933, 111 N.J.L. 426, 168 A. 592; Gallagher v. Fidelity & Casualty Co. of New York, 221 N.Y. 664, 117 N.E. 1067, affirming 1917, 163 App.Div. 556, 148 N.Y.S. 1016; Hammer v. Mutual Benefit Health & Accident Ass'n, 1952, 158 Ohio St. 394, 109 N.E.2d 649, 36 A. L.R.2d 1084; Woodmen of the World Life Ins. Soc. v. Chapman, 1941, 189 Okl. 69, 113 P.2d 600; Maryland Casualty Co. v. Hazen, 1938, 182 Okl. 623, 79 P.2d 577; Provident Life & Accident Ins. Co. v. Green, 1935, 172 Okl. 591, 46 P.2d 372; Goethe v. New York Life Ins. Co., 1937, 183 S.C. 199, 190 S.E. 451; Union Central Life Ins. Co. v. Boulware, Tex.Civ.App.1951, 238 S.W.2d 722; American Nat. Ins. Co. v. Fox, Tex. Civ.App.1944, 184 S.W.2d 937; Hruzek v. Old Line Life Ins. Co. of America, 1936, 221 Wis. 279, 265 N.W. 566; O'Connell v. New York Life Ins. Co., 1936, 220 Wis. 61, 264 N.W. 253; Mitchell v. Metropolitan Life Ins. Co., 1942, 124 W.Va. 20, 18 S.E. 2d 803.

Another group of cases, not dealing specifically with sunstroke, advances the general proposition that the term "accidental means" is synonymous with "accidental result" and "accidental death." New York Life Ins. Co. v. Cooper, 10 Cir., 1946, 158 F.2d 257, certiorari denied 335 U.S. 819, 69 S.Ct. 41, 93 L.Ed. 374; Preferred Accident Ins. Co. v. Clark, 10 Cir., 1944, 144 F.2d 165; Lang v. Metropolitan Life Ins. Co., 7 Cir., 1940, 115 F.2d 621; Wilson v. New York Life Ins. Co., D.C.E.D.Idaho, 82 F. Supp. 292, affirmed 9 Cir., 1949, 178 F.2d 534; O'Neil v. New York Life Ins. Co., 1944, 65 Idaho 722, 152 P.2d 707; Burr v. Commercial Travelers Mut. Acc. Ass'n, 1946, 295 N.Y. 294, 67 N.E.2d 248, 166 A.L.R. 462; United States Fidelity & Guaranty Co. v. Dowdy, 1950, 203 Okl. 207, 219 P.2d 215.

We refer also to several well considered workmen's compensation cases in which the same general views have been expressed. Fidelity & Casualty Co. of New York v. Burris, 1932, 61 App.D.C. 228, 59 F.2d 1042; Townsend & Freeman Co. v. Taggart, 1924, 81 Ind.App. 610, 144 N.E. 556; State ex rel. Rau v. District Court, 1917, 138 Minn. 250, 164 N.W. 916, L.R.A.1918F, 918; Skelly Oil Co. v. State Industrial Commission, 1923, 91 Okl. 194, 216 P. 933; Lane v. Horn & Hardart Baking Co., 1918, 261 Pa. 329, 104 A. 615, 13 A.L.R. 963; Walsh v. River Spinning Co., 1918, 41 R.I. 490, 103 A. 1025, 13 A.L.R. 956.

In their brief, counsel for appellee urge that workmen's compensation cases should be disregarded. They say: "The spirit and intent of the workman's compensation law vary considerably from the principles of contract and insurance law, and to apply the reasoning of workman's compensation cases to the issue here would be error." While we recognize that these are two different fields of insurance law, we cannot agree that for the purpose of the single question before us there is any reason in logic or common sense for applying a stricter rule in one than in the other. In both situations the same basic test applies in determining whether an "accidental means" produced the fatality.

Cases taking the contrary view are listed in the majority opinion in the Landress case, and in Appleman, Insurance Law and Practice, Vol. 1, § 447.

We have already mentioned that in Landress, supra, there was a dissenting opinion by Cardozo, J. That opinion has several times been quoted, adopted and followed by other courts, and it seems wise to quote parts of it here:

"Sunstroke, though it may be a disease according to the classification of physicians, is none the less an accident in the common speech of men. * * * The suddenness of its approach and its catastrophic nature * * * have made that quality stand out when thought is uninstructed in the mysteries of science. * * * Violent it is for the same reason, and external because the train of consequences is set in motion by the rays of the sun beating down upon the body, a cause operating from without.

" 'In my view this man died from an accident. What killed him was a heat-stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause, often, no doubt, threatened, but generally averted by precautions which experience, in this instance, had not taught. It was an unlooked for mishap in the course of his employment. In common language, it was a case of accidental death.' "

Textwriters have pointed to the dissent, not only as stating the "better" rule, but as expressing the view now adopted by a majority of courts. Vance on Insurance, 3d Ed., p. 949; Richards on Insurance, Vol. 1, § 17, p. 59. Appleman, Insurance Law and Practice, Vol. 1, § 447. At page 555 the author says: "The dissenting opinion of Justice Cardozo presents one of the most brilliantly reasoned opinions in the field of insurance law, and certainly the best at expressing the reasons in back of the rule adopted by the majority of jurisdictions."

In this jurisdiction there has been only one appellate decision on the subject and that made the flat declaration that death from sunstroke is is an accidental injury. Fidelity & Casualty Co. of New York v. Burris, 1932, 61 App.D.C. 228, 59 F.2d 1042, 1043. There the deceased was engaged in manual labor on an intensely hot day. He collapsed on his way to a water barrel and was taken to a hospital where he died later that same day "from heat prostration or sunstroke." The broad language of the opinion, per Groner, J., gives the answer to our question:

"The decision of the case turns, we think, upon the answer to two questions: *First, is death from sunstroke an accidental injury?* Second, did the sunstroke arise 'out of and in the course of employment'? *Both questions should be answered in the affirmative.* [Emphasis supplied.]

"The term 'accidental injury,' as used in the act, means any unexpected misfortune or mischance resulting in some form of bodily injury—an injury due to accident or caused by some sudden or unexpected occurrence. Deceased admittedly was killed by sunstroke. That was the injury. It was sudden and unexpected, and hence accidental. * * * "

It is true that it was a workmen's compensation case, but there was nothing in the decision limiting its application to that class of case, or indicating or even suggesting that a different result would have been reached if an industrial insurance policy were involved. Nor, as we have already said, is there any logical reason for not applying the same rule to industrial policies.

Other and much more recent decisions in this jurisdiction also point to a holding of liability in this case. It has always been the law that ambiguities are to be resolved in favor of the insured (or beneficiary) and against the insurance company which prepared the policy. That rule has recently been extended and strengthened. In Hayes v. Home Life Ins. Co., 1948, 83 U.S.App.D.C. 110, 112, 168 F.2d 152, 154, it was said that customers of insurance companies: " * * * are, in vast majority, not informed in the obscurities of insurance expertise and not equipped to understand other than plain language. If the companies were permitted to write clear clauses of liability at one point and obscure negations of liability at another, and to maintain successfully the prevalence of the latter over the former, the temptation to sell on one clause and defend on the other would be dangerous." That decision was cited and followed as recently as this year in Buchanan v. Massachusetts Protective Ass'n, D.C.Cir., 223 F.2d 609. There the court stressed the duty of an insurance company to spell out in plainest terms— terms understandable to the man in the street—any exclusionary or delimiting policy provisions, and said that the court would: "insist upon language which unambiguously conveys such an intent to the mind of an ordinary layman. Failing such unambiguous language, doubt should be resolved in favor of the insured."

■ With these rules to guide us, we think our course in this case is clear. We think we must rule that the collapse and death of Mr. Hoy was not only accidental in final result, but that an "accidental means" produced the fatal injury. Laying aside "insurance expertise," and laying aside also a purely technical, scientific or medical approach to the situation, it must be said that Mr. Hoy's death was caused by "violent, external and accidental means" as surely as if he had been struck down by a bolt of lightning, or by a tree or other physical object hurled against him by a strong wind.

Reversed, with instructions to enter judgment for plaintiff.